DAVID S. GORBATY, Judge.
liThe plaintiff, Carolyn Bonnie Ruffino, (“Ms.Ruffino”), appeals the judgment of the trial court dismissing her personal injury action against the defendants, Allstate Insurance Company (“Allstate”) and Roxanne Dier (“Ms.Dier”). For the reasons set forth below, we affirm.
FACTS AND PROCEDURAL HISTORY:
On December 8, 2002, Ms. Ruffino was visiting a friend who resided at 4008 Juno Drive in Chalmette, Louisiana. As she attempted to enter through the front en *730 trance, Ms. Ruffino walked into the glass storm door, striking her 'face and injuring her mouth. Ms. Ruffino filed the instant lawsuit against Ms. Dier, the property-owner, and Allstate, the insurer.
On July 25, 2005, a bench trial was held in this matter. After hearing testimony from Ms. Ruffino and Ms. Dier, and viewing photographs of accident scene, the trial court entered a judgment, in favor of the defendants on July 29, 2005. In written reasons for judgment, the trial court stated:
This Court believes that the testimony and evidence presented by the defendants is more likely .correct than the testimony of the plaintiff. That is, the storm door and its outlining frame were clearly 1 avisible in both the photographs and at the time the incident occurred. It is this Court’s finding from the testimony and evidence at trial that this doorway/storm door did not present an unreasonable risk of harm. The porch clearly had lights from both inside the apartment and an exterior light. It is the finding of the Court that the accident complained of was caused by the negligence of the plaintiff, Carolyn Bonnie Ruffino, by failing to see what she should have seen.
On August 8, 2005, Ms. Ruffino filed a motion for new trial. The motion for new trial was denied on January 24, 2006. Written reasons for judgment were also issued at that time. This timely devolutive appeal followed.
LAW AND ANALYSIS:
On appeal, Ms. Ruffino asserts that the trial court erred in determining that the storm door did not create an unreasonable risk of harm. It is well established in our jurisprudence that the unreasonable risk of harm analysis requires the trier of fact to balance the gravity and risk of harm against individual and societal rights and obligations, the thing’s social value and utility, and the cost and feasibility of repairing the defect. Reed v. Wal-Mart Stores, Inc., 97-1174, p. 5, (La.3/4/98), 708 So.2d 362, 365. Simply put, the trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others. Id.
This balancing test is not a simple rule of law which can be applied mechanically to the facts of the case. Because of the plethora of factual questions and other considerations involved, the issue necessarily must be resolved on a case-by-case basis. Reed, 97-1174 at p. 4, 708 So.2d at 364. Moreover, the trial court’s finding of whether a defect creates an unreasonable risk of harm is subject to a manifest error standard of review. Ambrose v. McLaney, 06-1181, p. 10 (La.App. 4 Cir. 5/16/07), 959 So.2d 529, 536.
Ms. Ruffino testified that she did not see the storm door. She argues on appeal that the transparency of the glass storm door rendered it invisible, thereby | ^creating a trap. In support of her argument that the glass storm door created a hazard, Ms. Ruffino cites Dixon v. Allstate, 362 So.2d 1368 (La.1978). However, we find Ms. Ruffino’s reliance on Dixon to be misplaced, as the facts are readily distinguishable. In Dixon, the plaintiff sustained injuries when she crashed through a closed sliding glass door. In finding that the door created a hazard, the court stated:
Care should increase with the magnitude of the harm which might befall a victim. A large sheet of thin, clean, transparent, untempered, not-laminated glass presents such an obvious risk of serious injury that it must be considered a hazardous substance. The location of such glass panels, blocking entry and *731 exit through openings in houses designed as passageways multiply the opportunities for serious accidents.
Dixon, 362 So.2d at 1369-1370.
In Dixon, the sliding glass door separated a den from a porch, with the floor of the porch being basically an extension of the floor of the den as both surfaces were made of broken paving tiles interrupted only by the track for the sliding glass door. The opinion noted the plaintiffs difficulty realizing at what point the den floor ended.
In the present case, it is undisputed that the storm door contained tempered safety glass that did not shatter as in Dixon. The glass storm door was marked with a black handle, trimmed on all four sides with a white frame, and positioned in front of a red, wooden door, which was open at the time of the accident. Moreover, the entryway was marked by a step-up from the front porch into the residence.
The defendants assert that the likelihood of an individual running into a tempered glass door marked with a black handle, a white frame, and located on an elevated threshold is minimal and easily outweighed by the utility of the storm 14door. Additionally, the defendants submit that since there was never such an accident on the property in the ten years that Ms. Dier owned it, she would not have thought to warn of any potential harm. We agree. Applying the balancing test to the evidence presented, we find no manifest error in the trial court’s conclusion that the storm door did not present an unreasonable risk of harm.
CONCLUSION:
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.