PAUL A. BONIN, Judge.
bRoyanne Davis claims that she slipped and fell on a kitty-litter-like material which had been spread over an oil slick near the gas pumps in the parking lot of a convenience store owned by the defendants, Cheema One, Inc. On motion of Cheema and its insurer, the trial court granted summary judgment and dismissed Ms. Davis’s case with prejudice. Ms. Davis appealed.
Applying the Merchant Liability Statute, La. R.S. 9:2800.6, we find upon our de novo review that the trial judge incorrectly dismissed with prejudice Ms. Davis’s lawsuit in its entirety. Considering Ms. Davis’s deposition testimony and the reasonable inferences therefrom to which she is entitled in summary judgment proceedings, we find that there is a genuine issue of material fact whether Cheema created the claimed dangerous condition on its premises. We do find, however, that Ms. Davis failed to make a positive showing in support of her alternative theory of recovery that Cheema had constructive notice of the dangerous condition, which precludes her recovery under that theory. And as a consequence Cheema identified to a partial summary judgment dismissing that alternative theory of recovery.
Thus we amend the trial court judgment to delete its decretal language dismissing with prejudice the lawsuit. We also grant partial summary judgment in Cheema’s fa *986 vor on the constructive notice theory of recovery. Finally, we remand the matter to the trial court for further proceedings solely under the theory of recovery that Cheema created the condition on its premises which caused Ms. Davis’s damages.
We explain our holding in greater detail below.
I
We first discuss this matter’s procedural history. Ms. Davis filed suit against Chee-ma and its insurer on April 5, 2012.[1] In her petition, Ms. Davis alleges that she was a customer at Cheema’s Belle Chasse, Louisiana Spur and Deli when, in the process of purchasing gasoline, she slipped and fell on a foreign substance on the premises. Her petition claims that the fall resulted in a broken fíbula, tibia, and ankle, as well as other injuries to her head, back, ribs, legs, feet, and hands. The petition asserts that Ms. Davis’s injuries were caused by Cheema’s failure to: 1) properly maintain the premises; 2) discover and correct the unsafe condition on the premises; 3) exercise reasonable care to prevent unsafe conditions on the premises; and, 4) warn her about the unsafe condition. Ms. Davis, | ¡¡accordingly, claims that Cheema and its insurer are liable to her for damages. After issue was joined by Cheema, the parties engaged in discovery practice. They subsequently held a status conference in February 2014 wherein the trial court set cut-off dates and the parties selected a September 15, 2014 trial date.
On June 20, 2014, Cheema filed a motion for summary judgment asking the trial judge to dismiss Ms. Davis’s action because she cannot prove an essential element of her claim.[2] Specifically, Cheema admitted for the purposes of its motion that Ms. Davis could prove the existence of a foreign substance on its premises — a kitty-litter-like substance spread out over an eight-foot diameter area near a gas pump — but contended that she cannot establish that it had actual or constructive notice of the substance. Cheema, accordingly, argued that since Ms. Davis could not establish the notice element of. her action, and there was no genuine issue of material fact, it was entitled to a judgment of dismissal as a matter of law.
In support of its motion, Cheema submitted a black and white photocopy of a photograph of the area in which Ms. Davis’s fell, and excerpts from several deposition transcripts. Ms. Davis filed an opposition memorandum in which she argued that the motion should be denied because there are genuine issues of material fact as to whether the hazardous condition, i.e., the foreign substance on the premises, was created by one of Cheema’s employees. Specifically, Ms. Davis |4argued that if “the inference to be drawn from the evidence and the perceived general knowledge of the trier of fact is that litter-like, absorbent substances are used to absorb gas or oil spills, then the reasonable inference is that it is placed there by employees of the gas station, as opposed to some good Samaritan.” Ms. Davis also asserted that there was a genuine issue of material fact as to whether Cheema’s cleanup procedures and protective meas *987 ures were sufficient to detect any uncreated spills on premises. In support of her opposition, Ms. Davis attached excerpts from several deposition transcripts, and a duplicate black and white photocopy of the photograph originally introduced by Chee-ma. In response, Cheema filed a supplemental memorandum on July 23, 2014, and attached additional deposition extracts.
The trial court was confronted, therefore, with whether a genuine issue of fact existed as to whether Cheema either created or had constructive notice of the substance that caused Ms. Davis’s fall. The parties argued the merits of Cheema’s motion before the trial court on July 25, 2014. The record establishes that the trial judge granted the motion in favor of Cheema, Inc., Cheema One, Inc., and Century and dismissed Ms. Davis’s claims with prejudice.[3] Ms. Davis subsequently sought a timely devolutive appeal of the trial court’s judgment.
JrJI
We now examine the statutory law and jurisprudence which governs our review of Cheema’s motion for summary judgment and establishes the standards for merchant liability.
A
We apply a de novo standard of review in examining trial court rulings on summary judgment motions. See Hare v. Paleo Data, Inc., 11-1034, p. 9 (La.App. 4 Cir. 4/4/12), 89 So.3d 380, 387. We, accordingly, use the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Id. A court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions, togéther with the affidavits, if any, show that'there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. See La. C.C.P. art. 966 B; Catahoula Parish School Board v. Louisiana Machinery Rentals, LLC, 12-2504, pp. 8-9 (La.10/15/13), 124 So.3d 1065, 1071. We, nevertheless (and importantly in this case), view the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant. See Hines v. Garrett, 04-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765.
On a motion for summary judgment, the burden of proof remains with the movant. La. C.C.P. art. 966 C(2). However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, Inaction, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. La. C.C.P. art. 966 C(2). If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment should be granted. Id.
 We also note that a “summary judgment may be rendered dispositive of a ... theory of recovery ... even though the granting of the summary judgment does not dispose of the entire case as to that party or parties.” La. C.C.P. art. 966 E. This is consistent with Louisiana’s system of pleading which allows a litigant to assert several inconsistent or mutually exclusive theories of recovery, causes of action, or defenses- as long as the allegations are well-grounded in fact, warranted by existing law or a good faith argument for the extension or change thereof, and not pled for improper purposes. See La. *988 C.C.P. arts. 863, 892 and 1006; Alexis v. Metropolitan Life Ins. Co., 604 So.2d 581, 582 (La.1992).
B
Ms. Davis’s petition claims that she slipped and fell on a foreign substance found on Cheema’s premises and asserts that it is liable to her for failing to properly maintain its grounds; Her action is, accordingly, controlled by La. R.S. 9:2800.6, Louisiana’s Merchant Liability Statute, which governs negligence claims brought against merchants for accidents caused by a condition existing on or in the merchant’s premises.[4]
[7The statute defines a merchant as “one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business.” La. 9:2800.6 C(2). We, and other all Louisiana circuit courts, have applied the Merchant Liability Statute, in final and summary judgment contexts, to the facts of slip and fall accidents occurring in both merchant and gas station parking lots. See, e.g., Finley v. Racetrac Petroleum, Inc., 48,923 (La.App. 2 Cir. 4/9/14), 137 So.3d 193 (slip and fall accident caused by foreign substance on gas station’s parking lot); Cline v. Cheema, 11-1029 (La.App. 4 Cir. 2/22/12), 85 So.3d 260 (trip and fall accident occurring on defect in premises of gas station’s parking lot); Glass v. Home Depot U.S.A., Inc., 10-53 (La.App. 5 Cir. 9/28/10), 50. So.3d 832 (slip and fall accident caused by foreign substance on merchant’s parking lot); Rodriguez v. Wal-Mart Stores, Inc., 02-0104 (La.App. 3 Cir. 6/5/02), 820 So.2d 1190 (slip and fall accident caused by foreign substance on merchant’s parking lot); McCrea v. Petroleum, Inc., 96-1962 (La.App. 1 Cir. 12/29/97), 705 So.2d 787 (slip and fall accident caused by, foreign substance on gas station’s parking lot).
The statute indicates that a merchant owes a duty “to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition.” LSA-R.S. 9:2800.6(A). This duty “includes a reasonable effort to keep the premises free of any hazardous conditions which | ¿reasonably might give rise to damage.” Id. The statute then provides that “[i]n a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises,” the plaintiff must prove, “in addition to all other elements of his cause of action,” all of the following elements: 1) “the condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;” 2) “the merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence;” and 3) “the merchant failed to exercise reasonable care.”[5] La. R.S. 9:2800.6 B.
*989 The Merchant Liability Statute defines constructive notice to mean that the plaintiff “has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.” La. R.S. 9:2800.6 C(l). The statute also indicates that the “presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.” Id. The jurisprudence also provides that a plaintiff may rely on circumstantial evidence to meet their burden of constructive notice. See Beggs v. Harrah’s New Orleans Casino, 14-0725, p. 10 (La.App. 4 Cir. 1/21/15), 158 So.3d 917, 923.
| flThe Merchant Liability Statute, therefore, provides a claimant with three potential theories of recovery under its second special element. Assuming he proves the remainder of the elements under the statute, a claimant can establish the merchant’s liability for his damages provided he shows that: 1) the merchant created the condition which caused his harm; 2) while it did not create the condition which caused his the harm, the merchant had actual notice of the condition; or 3) while it did not create the condition which caused his harm, the merchant had constructive notice of the condition. The manner of proving this second special element, consequently, varies according to the theory of recovery advanced by the claimant.[6] Ms. Davis does not advance the theory of recovery that Cheema had actual knowledge of the condition that caused her harm. We will, accordingly, pretermit further discussion of this theory of recovery. Ms. Davis, however, has elected to advance her cause upon the. two remaining theories of recovery asserting that the facts will show- that Cheema either created the harm-causing condition or had constructive notice of it.
Ill
We turn now to address the relevant facts as presented by the parties to the trial judge. Both Cheema and Ms. Davis attached to their respective memoranda a black and white photocopy of a photograph which purports to show the area where Ms. Davis fell from the vantage point of the clerk inside the service station. The hnbulk of the evidence attached to the parties’ memoranda, however, consists of extracts from the deposition transcripts of Ms. Davis and Blenda Jacqueline Amador, who Cheema contends was its employee on duty at the time of the accident.
Ms. Davis testified at her deposition that the accident happened on the evening of April 14, 2011. She noted that the weather that evening was “normal” and that she and several friends had attended a memorial party for a high school friend who had been killed. Ms. Davis was a passenger in a vehicle driven by a friend, while two other friends were riding in another vehicle. The driver of the vehicle in which Ms. Davis was riding stopped at Cheema’s Belle Chasse Spur station at approximately 11:45 p.m. to purchase gasoline for her car. Ms. Davis’s two other friends parked their car nearby and waited for them. She noted that this other vehicle was the only *990 other car at the gas station at the time of her accident. Ms. Davis testified that the car in which she was riding stopped at a row of gas pumps nearest the highway so that, after they finished fueling up the car, they could leave quickly and catch the last ferry, which left at midnight. She noted that while the area around the pantry was illuminated, the area around the gas pumps was not well-lit because only half of the lights were operating.
After her friend stopped the vehicle, Ms. Davis got out and walked inside of the pantry to pay for the fuel. Ms. Davis testified that she did not pay attention to the ground beneath her when she walked to the store. She stated that she paid the clerk on duty — an older man — and then left the store. Ms. Davis testified that she _]ilthen walked quickly back to her friend’s car along the same route as before. She again noted that she was not looking down when she walked. Ms. Davis testified that as she approached the ear she slipped and fell on a “grease stain with some kind of residue.”
She noted that the substance upon which she fell looked like small white “rock chips” and described it accordingly: “It looked like — I don’t know if it was kitty litter. It looked like kitty litter to me. Whatever stuff they put on a gas spill or oil spill, that is what I slipped on.” Ms. Davis testified that after her accident an employee from another gas station told her that “they normally put like kitty litter [on spills] just to soak the stuff up.” She also stated that the substance covered an area “eight feet around,” a few feet from her friend’s car, and was layered over a “shiny, shiny” substance. Ms. Davis did not know how long the shiny and kitty litter-like substances were on the ground prior to her fall. Similarly, Ms. Davis did not know who put the kitty litter-like substance on the ground.
The parties also introduced extracts from the deposition transcript of Ms. Ama-dor, who Cheema contends was the sole employee on duty at the time of Ms. Davis’s accident. Ms. Amador testified that she began working at Cheema’s Spur station in January 2011. She noted that for five to six days a week she worked the night shift, which ran from 10:00 p.m. till 6:00 a.m. She testified that she was a cashier and described her duties accordingly: “I was with the customers, also make sure the gas station was clean all the . time. Especially at night, it was kind of 112slow. So especially I was cleaning outside, make sure it was clean. Inside, restock and everything.”
Ms. Amador testified that she typically inspected the parking lot and the area around the pumps for trash twice a night — once at midnight and again at 5:00 a.m. She noted that in cleaning the parking lot she never had to do anything save empty the trash cans and pick up loose trash, cans, and paper. Similarly, she testified that in cleaning the parking lot she never used anything other than a broom and a dust pan.
Ms. Amador testified specifically that she remembered working the evening of April 14, 2011. She noted that she was the only employee working at the Spur on the evening of the accident. She also stated that she could see the parking lot from where she stood behind the counter inside the pantry. Ms. Amador testified that she witnessed no falls in the parking lot on the evening of April 14, 2011. She specifically recalled walking around the parking lot and fuel pumps and denied seeing any grease, oil stains, or kitty-litter-like substance on the grounds of the premises during her inspection. Ms. Amador also stated that she received no reports of any falls in the Spur’s parking lot when she was working on April 14, 2011.
*991 In fact, Ms. Amador denied ever seeing any grease or oil stains in the area around the fuel pumps during the entire time she worked at the Spur. She, likewise, denied ever seeing any kitty-litter on the grounds of the parking lot during the time she worked at the Spur, although she admitted to knowing what 11skitty-litter looks like. Ms. Amador, likewise, denied ever pouring or placing kitty-litter on the grounds of the gas station during the time she worked at the Spur. Ms. Amador also testified that she was unaware if any other Spur employee ever placed any type of kitty-litter-like substance in the parking lot. She also claimed that the Spur’s pantry did not stock kitty-litter.
On the other hand, when challenged as to her memory of April 14, 2011, Ms. Ama-dor could not recall the temperature, the general weather conditions, or if the moon was out that evening. Similarly, she had no recollection whether any of the lights illuminating the parking lot were out of operation that evening. And, when shown a picture of the Spur’s parking lot, Ms. Amador identified a dark patch on the ground as oil. Ms. Amador, nevertheless, testified that at no time that she worked at the Spur did a vehicle leak fluid onto the parking lot.
IV
In this Part we examine the evidence in light of the previously discussed law and conclude that summary judgment is proper with respect to Ms. Davis’s theory of recovery based on the proposition that Chee-ma had constructive notice of the grease stain or kitty-litter-like substance on its premises. On the other hand, we find that genuine issues of material fact exist which preclude summary judgment as to whether Ms. Davis can recover damages based upon the theory that a Cheema employee created the condition which caused her injuries.
I14A
We first conclude that summary judgment is proper with respect to any theory of recovery based upon the proposition that Cheema had constructive notice of the foreign substance which caused Ms. Davis’s fall. Cheema, as noted, admits for the purposes of its motion that Ms. Davis slipped on a foreign substance on its premises. In arguing that Ms. Davis cannot prove the element of constructive notice as required by the Merchant Liability Statute, Cheema first points to the testimony of Ms. Davis, who stated that she did not notice the foreign substance on the parking lot until after her accident. Cheema also points to the testimony of its employee, Ms. Amador, who testified that she: 1) specifically recalled working the night of the accident; 2) was aware of no foreign substance or accidents in the parking lot; and 3) had never poured kitty Utter on the parking lot or around the fuel pumps.
Ms. Davis argues, however, that genuine issues of material fact exist as to her ability to meet the statute’s constructive notice element. She asserts that Ms. Amador testified that she started her shift at 10:00 p.m. Ms. Amador also testified that she made her first inspection of the parking lot at midnight. Because her accident occurred prior to midnight, Ms. Davis reasons, it is possible that the foreign substance — which Cheema concedes was present — was on the gas station’s parking lot for almost two hours before the accident.
While the facts she relies upon are unchallenged, Ms. Davis’s speculation does not establish a genuine issue of material fact as to her ability to prove the Inessential element of the statute’s temporal notice requirement. In discussing the constructive notice portion of the Merchant Liability Statute, the Supreme Court has concluded that it “does not allow for *992 the inference of constructive notice absent some showing of this temporal element.” White v. Wal-Mart, 97-0393, p. 4 (La.9/9/97), 699 So.2d 1081, 1084. In White, the Supreme Court explained that it is the claimant who “must make a positive showing of the existence of the condition prior to the fall.” Id. And it emphasized that “[a] defendant merchant does not have to make a positive showing of the absence of the existence of the condition prior to the fall. Notwithstanding that such would require proving a negative, the statute simply does not provide for a shifting of the burden.” Id.
In discussing the type of positive showing required of a plaintiff under the Merchant Liability Statute, the Supreme Court recognized that “[t]hough there is no bright line time period, a claimant must show that the condition existed for such a period of time.... ” White, 97-0393, p. 4, 699 So.2d at 1084 (emphasis added, punctuation omitted). “Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period.” Id. Therefore, a plaintiff “who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has' not carried the burden of proving constructive notice as mandated by the statute.” Id. The Supreme Court concluded that although “the time period need not be- specific in minutes or hours, constructive notice requires that the claimant prove the 11ficondition existed for some time period prior to the fall.” White, 97-0393, p. 4, 699 So.2d at 1084-1085.
Here, Ms. Davis relies on possibilities and speculative inferences in order to prove the temporal element inherent in the statute’s constructive notice requirement. White, however, -prohibits the inference of constructive notice absent some positive showing of the temporal element. See White, 97-0393, p. 4, 699 So.'2d at 1084. Ms. Davis has failed to make such a positive showing on the temporal element. Our review of the evidence in the record before us establishes, therefore, that she will not be able to satisfy her evidentiary burden of proving constructive notice at trial. See, e.g., Babin v. Winn-Dixie Louisiana, Inc., 00-0078, p. 5 (La.6/30/00), 764 So.2d 37, 40 (“[S]uch speculation falls far short of the factual support required to establish that plaintiff will be able to satisfy his evidentiary burden of proof at trial.”); Kennedy v. Wal-Mart Stores, Inc., 98-1939 (La.4/13/99), 733 So.2d 1188. We, accordingly, conclude that summary judgment is proper with respect to any theory of recovery based upon the proposition that Cheema had constructive notice of the foreign substance which caused Ms. Davis’s injuries.
B
Despite her inability to establish a genuine issue of material fact on the constructive notice theory of recovery, we find, however, that Ms. Davis has established a genuine issue of material fact as to whether Cheema created the condition which caused her injuries. In disputing this theory, Cheema — it must be 117reiterated — admits for the purposes of summary judgment that a foreign substance on its premises caused Ms. Davis’s injuries. It also points to Ms. Amador’s testimony that she never poured any kitty-litter-like substance on the grounds of its parking lot where Ms. Davis fell. Ms. Davis, on the other hand, testified to being told by an employee from another gas station that kitty-litter is used by gas stations to soak up spills on their property. From these facts, Ms. Davis argues that it is reasonable to infer that the kitty-litter-like substance was placed on the grounds by one of Cheema’s employees. We agree.
*993 The Merchant Liability Statute’s notice requirement need not be proved if the claimant first establishes that the merchant created the injury-causing condition. See Ruby v. Jaeger, 99-1235, p. 3 (La.App. 4 Cir. 3/22/00), 759 So.2d 905, 907. And despite the legislative mandate that summary judgment proceedings are favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent’s favor. See Wellman v. Tufail, 12-1173, p. 11 (La.App. 4 Cir. 2/6/14), 136 So.3d 51, 57, citing Willis v. Medders, 00-2507, p. 2 (La.12/8/00), 775 So.2d 1049, 1050.
Cheema argues that it would be improper under the Merchant Liability Statute to infer from facts in the record that it created the condition. Our jurisprudence says otherwise. For example, in Ruby we affirmed a judgment imposing liability on a merchant pursuant to the Merchant Liability Statute wherein the trier of fact inferred from facts in the record that the merchant created |1sthe condition that caused the plaintiffs injuries. See 99-1235, pp. 4-5, 759 So.2d at 907.
If we accept as fact, as Cheema asks us to do, that Ms. Davis slipped on a kitty-litter-like substance, it is a reasonable inference that it was the merchant, and not a customer or stranger, who put the substance on its parking lot surface to remedy an oil slick. Ms. Amador’s insistence that she was the only employee on duty that night is disputed by Ms. Davis’s testimony that an employee on cashier duty the night of her accident was an older man. And, of course, this inference is reasonable in light of Ms. Davis’s unchallenged testimony that gas stations use kitty-litter to soak up fluid spills on their premises.
Cheema, on the other hand, asserts that it could not have created the condition and points to Ms. Amador who specifically recalled the night in question, denied ever pouring kitty-litter on the parking lot for any reason, and insisted that she had never seen a fluid spill or any kitty-litter-like substance on the gas station’s premises. Despite the fact that she insisted that she specifically remembered her shift on the date of the accident, and any number of facts regarding her work at the Spur, Ms. Amador could not remember such basic facts as the general weather conditions on the night of the accident. Ms. Davis, therefore, successfully called into question Ms. Amador’s memory of April 14, 2011.
The resolution of this issue — i.e., whether Cheema created the condition which caused Ms. Davis’s injuries — is largely dependent upon how a fact-finder |18credits Ms. Amador’s testimony because she was the only Cheema representative to testify about the events of April 14, 2011, and Cheema’s cleanup and safety procedures. Such' a determination, in light of Ms. Davis’s testimony that an older man was on duty at the time of her accident, clearly calls into account Ms. Amador’s knowledge and credibility. It is axiomatic that a court may not make credibility decisions on a motion for summary judgment. See Hutchinson v. Knights of Columbus, Council No. 5717, 03-1533, p. 8 (La.2/20/04), 866 So.2d 228, 234. Further, “summary judgment is seldom appropriate for determinations based on subjective facts such of motive, intent, good faith, knowledge, or malice and should only be granted on such subjective issues when no genuine issue of material fact exists concerning that issue.” See Monterrey Center, LLC v. Education Partners, Inc., 08-0734, p. 10 (La.App. 1 Cir. 12/23/08), 5 So.3d 225, 232. Accordingly, we conclude that there is a genuine issue of material fact as to whether Ms. Davis can recover damages under a theory of liability based upon the proposition that Cheema created the condition which caused her injuries.
*994 y
Thus, because we find that there is a genuine issue of fact as to whether Chee-ma created the condition on the premises, which is one theory of recovery available to her under the Merchant Liability Statute, we necessarily find that the trial judge incorrectly dismissed Ms. Davis’s lawsuit with prejudice and amend the decretal language of the trial court judgment to delete the dismissal with prejudice of her lawsuit. But, finding that Cheema and its insurer are entitled to partial |¡>nsummary judgment on Ms. Davis’s other theory of recovery under the Merchant Liability Statute that Cheema had constructive knowledge of the condition of the premises, we modify the judgment so that it grants partial summary judgment dismissing that theory. See La. C.C.P. art. 966 E (“A summary judgment may be rendered dispositive of a ... theory of recovery ... even though the granting of the summary judgment does not dispose of the entire case as to that party or parties.”).
And this grant of partial summary judgment has law-of-the-case effect and is binding on the trial court on remand. See Duncan v. Bartholomew, 11-0855, p. 17 (La.App. 4 Cir. 3/14/12), 88 So.3d 698, 711 (“The law-of-the-case doctrine or principle refers to ... the conclusive effects of appellate court rulings at the trial on remand.”). Generally, when an appellate court considers arguments made on appeal or in response to such appeals, the court’s disposition on the issue considered becomes, as in considered writ applications, the “law of the case,” “foreclosing relitigation of that issue either in the trial court on remand or in the appellate court on a later appeal.” See Reed v. St. Charles General Hosp., 08-0430, p. 9 (La.App. 4 Cir. 5/6/09), 11 So.3d 1138, 1145.
DECREE
We amend the trial court’s summary judgment and delete its decretal language dismissing with prejudice the lawsuit filed by Royanne Davis. We further amend the trial court judgment to grant partial summary judgment herein in favor of Cheema, Inc., Cheema One, Inc., and Century Surety Company and against Royanne Davis, dismissing any theory of recovery under La. R.S. 9:2800.6 |¾1 based upon the proposition that Cheema had actual or constructive notice of the condition which caused the damage, prior to the occurrence. We remand the matter to the trial court for further proceedings consistent herewith.
JUDGMENT AMENDED AND REMANDED.
LOVE, J., concurs and assigns reasons.

. Ms. Davis’s original petition incorrectly identified Cheema as "Cheema, Inc.” She amended her petition, prior to the defendants' answer, to reflect the fact that the insured's proper name is "Cheema One, Inc.” See La. C.C.P. art. 1151.

. Despite the amendment of Ms. Davis’s petition to substitute Cheema One, Inc., for Chee-ma, Inc., the motion was filed on behalf of Cheema, Inc., and Century Surety Company. An additional motion was filed by Cheema One., Inc., on June 24, 2014, which adopted by reference the entirety of the motion, exhibits, and memorandum previously filed by Cheema, Inc., and Century.

. The trial judge did not provide written reasons for judgment and the parties have not seen fit to provide us with a transcript of the show cause hearing. We, therefore, lack the insight of the trial judge’s reasons for ruling.

. At the outset, we note that Ms. Davis argues on appeal that the doctrine of res ipsa loquitur applies to her case and that the trial court erred in applying La. R.S. 9:2800.6 instead of the general negligence law found in La. Civil Code articles 2315 and 2317. Ms. Davis, however, did not raise these issues before the trial court below. Rather, her opposition memorandum to the trial court does not assert res ipsa loquitur and admits clearly that La. R.S. 9:2800.6 sets “the burden of proof necessary to establish the defendants' liability in this case.’’ Generally, issues not raised in the trial court will not be given consideration for the first time on appeal. See Rule 1-3, Uniform Rules — Courts of Appeal; Scott v. Zaheri, 14-0726, p. 14 (La.App. 4 Cir. 12/3/14), 157 So.3d 779, 788. Therefore, we will neither analyze this matter under the doctrine of res ipsa loquitur nor consider as error the trial judge's application of La. R.S. 9:2800.6 to the facts of this case.

. The statute also indicates that in determining the element of reasonable care, which is not at issue in this appeal, "the absence of a *989 written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.” La. R.S. 9:2800.6 B(3).

. Such variance between methods of proof and theories of recovery is not unique to the Merchant Liability Statute. See, e.g., Halphen v. Johns-Manville Sales Corp., 484 So.2d 110, 113, in which the Supreme Court examined the methods of establishing liability for unreasonably dangerous products prior to the enactment of La. R.S. 9:2800.52, et seq., Louisiana’s Products Liability Act.