EDWIN A. LOMBARD, Judge!
hThe Appellant, Rouse’s Enterprises, L.L.C. d/b/a Rouses Markets (hereinafter “Rouses”), seeks review of the October 30, 2015 judgment of the First City Court of the City of New Orleans in favor of the Appellee, Donna Massery, awarding her a total of $19,490.70 in general and medical damages, plus interest and court costs, subject to a 50% fault allocation to. Ms. Massery. Finding that the judgment is not manifestly erroneous or clearly wrong, we affirm.
In June 2013, Ms. Massery, who was in her early fifties at the time, sustained soft tissue injuries as a result of tripping and falling over a vegetable cart in a Rouses’ grocery store located in New Orleans as she was leaving the refrigerated produce section. • In its Reasons for Judgment, the trial court set-forth the facts as follows:
Plaintiff entered the Rouses store and to her immediate right was the refrigerated produce section. She proceeded to the refrigerated section and was looking for ginger. Working at the refrigerated section was Assistant Produce Manager, Jose Villa. He was re-stocking vegetables and other produce. The boxes containing the produce were stacked on a push cart. Photos of the cart depict it to be, in the court’s estimation, approximately 5 to 6 feet wide (depth of approximately 24 to 36 inches) with a horizontal bed spanning its width. The bed of the heart is about 4 inches from the floor of the store. On each end of the cart is an upside down U-shaped bar extending about 5 to 6 feet high. Essentially, a number of boxes can be stacked on the bed of the cart up to 5 or 6 feet high and the employee pushes or pulls the cart from either end.
On the day in question, the cart was not stacked to capacity. There were 4 boxes at the left end of the cart and 1 box at the right end of the cart. The middle section of the cart (approximately 36 to 42 inches based on the photo) was empty.
The cart was positioned parallel to the produce section. There was a long black safety mat (approximately 36 inches wide) in front of the produce section — between the edge of the produce section and the beginning of the vegetable cart. The mat, the court assumes, is in place for the safety of the shoppers. It helps absorb water and aids in the prevention slip and falls in the area. In this case, the width the mat [sic] was the area open for shoppers to traverse the refrigerated section and shop.
The floor of the store had a linear striated design with light gray/medium gray/dark gray coloring. The vegetable cart was gray in color.
Plaintiff Massery asked Mr. Villa about the location of the ginger. The ginger was located at the top right of the produce section near plaintiff. Plaintiff avers she reached for the ginger, secured it, and turned around to step away and immediately fell over the cart. She broke the fall with her hands, but nevertheless hit her right shin and her left knee on the cart. She acknowledged having a brief conversation with Mr. Villa about the location of the ginger and produpe generally; however, she *760 disagrees with Mr. Villa about the length and substance of the discussion.
Mr. Jose Villa acknowledged speaking to plaintiff about the ginger and other produce items, but he stated that the duration of the discussion was somewhat longer than that described by the plaintiff. When asked about the length of the conversation, Mr. Villa stated it was not more than 15 minutes.
Mr. Villa testified that he noticed the plaintiff backing up closer and closer to the cart more than once |sduring their conversation. He stated that he told the plaintiff [,] “Miss you are backing up a little too close to the cart.” He even extended his right hand behind the plaintiffs back to prevent her from getting any closer to the cart. Plaintiff heeded his warning and moved, away from the cart about a half a foot. Mr. Villa stated that he continued talking to the plaintiff and continued to caution the plaintiff about the vegetable cart. After finishing their conversation and notwithstanding his warnings, plaintiff Massery turned- away from the produce section and tripped and fell over the vegetable cart.
Plaintiff Massery testified that there -was a brief discussion with Mr. Villa prior to her fall. She does not :agree with Mr. Villa’s description of the length and the substance of the discussion.
In July 2013, Ms. Massery filed suit against Rouses in First City Court seeking damages for injuries she sustained -as a result of her fall. After a trial on the merits, the trial court awarded Ms. Mas-sery $15,000 in general damages, $4,640.70 in medical specials, as well as interest and court costs- subject to a 50% fault allocation to her,- This timely appeal followed. Rouses raises three (3) assignments of error on appeal:
'1. The trial court erred in finding that its placement of the vegetable stocking cart created an unreasonable risk of harm;
2. The trial court’s assignment of 50% percent fault on Rouses and reliance on Darby D. Brookshire Grocery Co., 37,460 (La.App. 2 Cir. 7/30/03), 851 So.2d 358 [subsequent history omitted], is in error; and,
3. The trial court committed legal error in misinterpreting La. Rev. Stat. 9:2800.6.
Unreasonable Risk of Harm
In its first assignment of error, Rouses avers that Ms. Masséry failed to meet her burden of proof under La. Rev.S tat. 9:2800.6. It maintains that the trial court manifestly erred in determining that the vegetable cart created an unreasonable risk 14of harm. The vegetable cart, it avers, was an open and obvious condition of which Ms. Massery was aware. Consequently, it avers that the placement of the vegetable cart did not create an unreasonable risk of harm as the cart was not hidden. Moreover, Rouses points out that the trial court noted in its recitation of the facts that Ms. Massery had to have seen the cart as she approached the produce department and that she was made aware of the cart by Mr.,.Villa several times while she remained in the produce department. The trial court further noted that Ms. Massery should have seen the sizeable vegetable cart in the produce section as she approached that department; Thus, Rouses maintains that an open and obvious condition existed for which it is not liable. Bufkin v. Felipe’s Louisiana, LLC, 14-0288, p. 7 (La.10/15/14), 171 So.3d 851, 856.
The Merchant Liability Statute, La. Rev. Stat. 9:2800.6, entitled Burden of proof in claims against merchants, provides in pertinent part:
*761 A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, • passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
| ü(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
C. Definitions:
(1) “Constructive notice” means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.
(2) “Merchant” means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to.those areas or aspects of the' premises which are similar to . those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.
Pursuant to the Merchant Liability Statute, a plaintiff must prove, the following elements, in addition to all other elements of'his cause of action: 1) the condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable; 2) the merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and 3) the merchant failed to exercise reasonable care. Davis v. Cheema, Inc., 14-1316, p. 8 (La.App. 4 Cir. 5/22/15), 171 So.3d 984, 988.
Courts.determine whether a condition is unreasonably dangerous by applying a risk-utility balancing test. “This test encompasses four factors: (1) the utility of the thing; (2) the likelihood and magnitude of harm, which includes the | ^obviousness and apparentness of the condition; (3) the cost of preventing "the harm; and (4) the nature of the plaintiffs” activities in terms of its social utility, or whether it is dangerous by nature.” Pryor v. Iberia Par. Sch. Bd., 10-1683, p. 4 (La.3/15/11), 60 So.3d 594, 597. “Simply put, the trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others.” *762 Guerrero v. Brookshire Grocery Co., 49, 707, pp. 8-9 (La.App. 2 Cir. 4/29/15), 165 So.3d 1092, 1098 [citations omitted].
A merchant’s duty to exercise reasonable care to protect patrons encompasses keeping the premises safe from unreasonable risks of harm or warning persons of known dangers. Retif v. Doe, 93-1104 (La.App. 4 Cir. 2/11/94), 632 So.2d 405, 408. A hazardous condition is one that creates an unreasonable risk of harm to customers under the circumstances. Pena v. Delchamps, Inc., 06-0364, p. 4 (La.App. 1 Cir. 3/28/07), 960 So.2d 988, 991.
However, merchants are not insurers of their patrons’ safety, and a customer is under a duty to use ordinary care to avoid injury. Moore v. Murphy Oil USA, Inc., 15-0096, pp. 14-15 (La.App. 1 Cir. 12/23/15), 186 So.3d 135, 147 (citing Cusimano v. Wal-Mart Stores, Inc., 04-0248 (La.App. 1 Cir. 2/11/05), 906 So.2d 484, 488). A merchant is not absolutely liable every time an accident happens. Id. (citing Leonard v. Wal-Mart Stores, Inc., 97-2154 (La.App. 1 Cir. 11/6/98), 721 So.2d 1059, 1061). Additionally, it is well settled that a condition which is open and obvious is not unreasonably dangerous, and a merchant has no duty to protect against it. Moore, 15-0096, p. 15, 186 So.3d at 147. “In order for a defect to be considered open and obvious, the danger created by that defect must be apparent to all corners, i.e., everyone who may potentially encounter it.” Id.
Lastly, a trial court’s finding of whether a defect creates an unreasonable risk of harm is subject to a manifest error standard of review. Ambrose v. McLaney, 06-1181, p. 10 (La.App. 4 Cir. 5/16/07), 959 So.2d 529, 536. “Because of the plethora of factual questions and other considerations involved, the issue necessarily must be resolved on a case-by-case basis.” Ruffino v. Allstate Ins. Co., 07-0420, p. 2 (La.App. 4 Cir. 9/19/07), 968 So.2d 729, 730 [citation omitted].
In the instant matter, the district court noted that customers generally expect to see carts in grocery stores. Both grocers and customers have an interest in keeping items in stock throughout a stores operating hours. The trial court ultimately reasoned, however, that the placement of the vegetable cart created an unreasonable risk of harm. It further held that it was reasonably foreseeable that a customer focused on shopping, such as Ms. Mas-sery, could be injured. This finding is not manifestly erroneous under the facts presented.
Rouses had constructive notice of the condition, under La. Rev. Stat. 9:2800.6 C(l), as Mr. Villa observed more than once that Ms. Massery was too closé' to the vegetable cart and warned her of that fact. He also physically extended his hand to keep her from getting too close to the cart evidencing his awareness that she was at some risk of harm.[1] The trial court noted *763 that while Ms. Massery |8had a duty to be aware of her surroundings, Rouses too had an obligation under the circumstances to prevent this type of accident from occurring. Ms. Massery, as a shopper, was clearly distracted at the time of the accident, though she should have remained aware of her surroundings. Thus, we find .that the trial court’s determination that the location of the cart created an unreasonably dangerous condition is not manifestly erroneous. This assignment of error is without merit.
Allocation of Fault
Rouses argues that the uncontro-verted facts in this matter show that Mr. Villa never left the vegetable cart, and he consistently warned Ms. Massery to move away from it. Thus, Rouses contends that his actions demonstrate that Rouses' was exercising reasonable care in protecting Ms. Massery. ' Ms. Massery’s lack' of awareness and failure to take precautions, it avers, was the sole cause of her accident. The trial court improperly relied upon Darby in allocating fault in this matter, Rouses contends.
Rouses relies upon Retif, 632 So.2d at 408, wherein we held that merchants are not required to insure against all accidents that occur on their premises. A shopper has a duty of exercising reasonable care for his or her own safety and for the safety of those under his care and control.
The trier of fact is vested with much discretion in its allocation of fault. Duncan v. Kansas City Southern Railway Co., 00-0066, pp. 10-11 (La.10/30/00), 773 So.2d 670, 680-81 (citing Clement v. Frey, 96-1119 (La.1/16/96), 666 So.2d 9607, 609, 610). The Supreme Court explained in Duncan that an appellate court can only disturb an award after concluding that the trier of fact’s allocation of fault is clearly wrong or manifestly erroneous:
... [A]n appellate court should only disturb the trier of fact’s allocation- of fault when it is clearly wrong or manifestly erroneous. Only after making a determination that the trier of fact’s- apportionment of fault is clearly wrong can an appellate court disturb the award, and then only to the extent of lowering it or raising it to the highest or lowest point respectively which is reasonably within the trial court’s discretion. -
Id. [Citations omitted].
Appellate courts are guided by five factors set.forth in Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985) in determining whether a trial court erred in its allocation of fault:
(1) whether the conduct resulted from inadvertence or involved an awareness of the danger;
(2) how great a risk was created by the conduct;
(3) the significance of what was sought by the conduct;
(4) the capacities of the actor, whether superior or inferior; and
(5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the faulVnegligent conduct and the harm to the plaintiff are considerations in determining'the relative'fault of theparties.
Rouses asserts that the trial court should have relied upon Bufkin instead of *764 Darby in making its comparative fault analysis. In Bufkin, a construction company filed a motion for summary judgment against a pedestrian who was suing it for negligence. The pedestrian was injured by a bicyclist as the pedestrian attempted to cross a street near a dumpster, which the construction -company had placed on the street. The district court denied the defendant construction company’s motion for hnsummary judgment, and the company’s supervisory writ application was denied by the appellate court. Bufkin, 14-0288, p. 2, 171 So.3d at 853-854.
The Supreme Court granted the construction company’s writ application and granted summary judgment finding that the dumpster was an obvious and apparent condition and did not create an unreasonable risk of harm. Id., 14-0288, p. 3, 171 So.3d at 854. It held that “any vision obstruction, caused by the dumpster, to a pedestrian crossing Conti Street at that mid-block location was obvious and apparent, and reasonably safe for persons exercising ordinary care and prudence; Moreover, because the size of the dumpster was comparable to a pick-up truck, this particular situation was of the type any pedestrian might encountered on a regular basis.” Id., 14-0288, p. 10, 171 So.3d at 858.
Darby involved an. appeal by an 87-year-old grocery store customer seeking review of the disteict court’s determination that she was 50% at fault for injuries she sustained as a result of tripping in a grocery store.. The plaintiff was shopping and looking for the price.of eggs in the dairy section when she stepped backwards without looking. She tripped over an unattended stocking cart and fell sustaining injuries. The Second Circuit upheld the trial court’s allocation of fault reasoning that the plaintiff bore partial responsibility for the accident because she did not look behind her before stepping backwards and “for not being at least somewhat aware of her surroundings.” Darby, 37,460, p. 5, 851 So.2d at 361. The court observed that the stocking cart was large and not hidden from view.
Regarding the defendant grocery store, the Second Circuit further held that the stocking cart was an obstruction in the aisle. The court explained that grocery stores “must anticipate that customers will not always be looking at the floor as they proceed with their shopping, but often will be looking at items on the shelf In and, thus, may trip over obstructions in the aisle.” Id., 37,460, pp. 4-5, 851 So.2d at 361.
We note that Darby, unlike Bufkin, involves a merchant liability claim like the matter sub judice. Furthermore, although slightly factually dissimilar from the instant matter, Darby also involved a preoccupied customer and a grocery store that left a customer’s pathway obstructed. Rouses makes much of the fact that in Darby the cart at issue was unattended, whereas Mr. Villa was with the vegetable cart in the instant matter. .However, the trial court reasonably concluded that although Mr. Villa was present, he failed to remove the obstruction, i. a, the vegetable cart. . Thus, it was reasonable for the trial court to allocate a high percentage of fault to Rouses. We find no error in the trial court’s-reliance upon Darby in its allocation of fault analysis.
Ms. Massery was indeed careless in her disregard of the cart adjacent to her. Additionally, as previously discussed, it was reasonable for the trial court to conclude that Mr. Villa’s failure to relocate the mobile cart away from Ms. Massery as she shopped contributed to the occurrence of the accident. Such an effort would have inconvenienced Rouses little. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart v. *765 State through Dep’t of Transp. & Dev., 617 So.2d 880, 882 (La.1993). Even if we were convinced that we would have weighed the evidence differently, we are precluded from substituting our findings where the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety. Id. (citations omitted). This assignment of error is without merit.
| ^Interpretation of La. Rev. Stat. 9:2800.6
Lastly, Rouses avers that the trial court misinterpreted and misapplied La. Rev, Stat. 9:2800.6. Based upon its argument that the trial court erroneously relied upon Darby in allocating fault, Rouses maintains that it has demonstrated that Ms. Massery did not establish that Rouses created an unreasonable risk of harm because the vegetable cart was an open and obvious condition. Consequently,' Rouses asserts that she cannot meet every element of her burden ‘ of proof under La. Rev. Stat. 9:2800.6, which is fatal to her negligence claim.
However, as discussed above, the trial court’s allocation of fault is neither clearly wrong nor manifestly erroneous. Moreover, we uphold the trial court’s determination -that an unreasonable risk of harm existed on the premises at the time of Ms. Masserjfs accident because the.presence of the vegetable cart in the area where Ms. Massery was distracted by shopping contributed to the occurrence of the subject accident. Therefore, we pretermit further discussion of’this assignment of error,
DECREE
For the foregoing reasons, the judgment of the trial court in favor of Donna Mas-sery is affirmed.
AFFIRMED

.. Regarding constructive notice under • La. Rev. Stat. 9: 2800.6 C(l), our Court has explained that the presence of a merchant's employee in the area where the condition exists does not create constructive notice, unless the employee knew or should have known . of the condition in the exercise of reasonable . care. We explained:
The Merchant Liability Statute defines constructive notice to mean that the plaintiff "has proven that the condition existed for such a period of time that it would have b.een discovered if the merchant had exercised reasonable care.” La. R.S. 9:2800.6 C(l). The statute also indicates that the "presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.” Id. The jurisprudence also provides that a *763 plaintiff may rely on circumstantial evidence to meet their burden of constructive notice. See Beggs v. Harrah’s New Orleans Casino, 14-0725, p. 10 (La.App. 4 Cir. 1/21/15), 158 So.3d 917, 923.
Davis, 14-1316; p. 8, 171 So.3d at 989.