SHEILA M. GUIDRY

VERSUS

BROOKSHIRE GROCERY COMPANY, ET AL.

\*\*\*\*\*\*\*\*\*\*\*

ON SUPERVISORY WRIT FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2015-4684-G
HONORABLE LAURIE A. HULIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*

SYLVIA R. COOKS
JUDGE
\*\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks and John D. Saunders, Judges.

THIBODEAUX, Chief Judge, dissents and assigns written reasons.

WRIT DENIED.

Danielle Thompson
Paul J. DeMahy
The Thompson Law Office, LLC
290 Johnston Street, Suite 301
Lafayette, LA  70503
(337) 534-8761
Attorneys for Plaintiff/Respondent
 Sheila M. Guidry

Andrew H. Meyers
Breaud & Meyers, APLC
P. O. Box 3448
Lafayette, LA 70503
(337) 266-2200
Attorneys for Defendant/Applicant
 Brookshire Grocery Company

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

Sheila M. Guidry (Plaintiff) allegedly sustained injuries when she slipped and fell in a Super 1 supermarket, owned by Brookshire Grocery Company (Defendant), on June 21, 2015. Plaintiff alleged an area of water approximately twelve inches in diameter was present on the floor for a sufficient period of time for Defendant to have been aware of the hazard in the exercise of ordinary care. The parties did not dispute that the presence of water on the polished concrete floor presents an unreasonably dangerous condition. The trial court granted summary judgment on the issue of liability in favor of Plaintiff. Defendant filed supervisory writs seeking review of the trial court's judgment asserting the trial court erred in finding it had constructive notice of a hazardous condition and failed to take remedial action resulting in Plaintiff's fall.

## ANALYSIS

We review summary judgments de novo applying the same criteria governing the trial court's determination of whether to grant that summary judgment. Under the provisions of La.Code Civ.P. art 966(A)(3), a motion for summary judgment shall be granted upon a showing that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.

Plaintiff brings her claims under La.R.S. 9:2800.6, commonly known as the merchant liability statute. It provides that:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. *This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.*
>
> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition

existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

C. Definitions:

(1) *"Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.* The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

(2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.

D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.

La.R.S. 9:2800.6 (emphasis added).

In support of her motion for summary judgment Plaintiff has established that she slipped on a wet liquid present on Defendant's floor for at least seventy minutes before the accident. Plaintiff and an eyewitness testified that Plaintiff slipped on a wet substance and this clear liquid was on her dress after she fell. Defendant does not rebut this testimony. We have viewed Defendant's security video tape of the area of the store where Plaintiff fell. The video reveals that in the seventy minutes preceding the accident there is no evidence of anyone spilling any liquid in the area.

This, taken together with Plaintiff's unrefuted testimony that she could feel a wet substance on her dress after she fell, established that the liquid was present in the area for quite some time before she slipped and fell. This court and the State Supreme Court have held that Plaintiff may meet her burden of proof under this statute by both direct and circumstantial evidence. See *Blackman v. Brookshire Grocery Co.*, 07-348 (La. App. 3 Cir. 10/3/07), 966 So.2d 1185, and *Lewis v. Jazz Casino Co., L.L.C.*, 17-935 (La. App. 4 Cir. 4/26/18), 245 So.3d 68, *writ denied*, 18-757 (La. 9/21/18), 252 So.3d 877, and cases cited therein.

> Proof of the temporal element of La. R.S. 9:2800.6 may be made by both direct and substantial evidence. *Birdsong v. Hirsch Mem'l Coliseum*, 39,101, p. 7 (La. App. 2 Cir. 12/15/04), 889 So.2d 1232, 1236. Thus, "[a] plaintiff is not required to prove by eyewitness testimony that the hazardous condition existed for a certain number of minutes prior to the fall." *Beggs v. Harrah's New Orleans Casino*, 14-0725, p. 10 (La. App. 4 Cir. 1/21/15), 158 So.3d 917, 923. Ms. Lewis, therefore, **may rely on circumstantial evidence to meet her burden of proving constructive notice.** *See Davis v. Cheema, Inc.*, 14-1316, p. 8 (La. App. 4 Cir. 5/22/15), 171 So.3d 984, 989. *Circumstantial evidence is "evidence of one fact, or a set of facts, from which the existence of the fact to be determined may reasonably be inferred.*" *Smith v. Toys "R" Us, Inc.*, 98-2085, p. 7 (La. 11/30/99), 754 So.2d 209, 213.

*Lewis*, 245 So.3d at 75. (emphasis added).

Plaintiffs unrefuted facts lead to the logical conclusion that there was a clear liquid on the floor that caused Plaintiff to slip and fall and that the liquid was on the floor for at least seventy minutes before Plaintiff unwittingly stepped in it and fell. Defendant asserts that because no one is seen spilling any liquid on the floor during the course of the video, there was no liquid on the floor prior to Plaintiff's fall. When Plaintiff is seen falling in the video there is no evidence that she spilled any liquid at that moment or just prior to her fall. Moreover, Defendant's argument ignores Plaintiff's unrefuted evidence that she slipped on a wet liquid and that her dress was noticeably wet after she fell. Additionally, Defendant's assertion that the amount of

3

liquid on the floor where Plaintiff fell was only a few inches in diameter is contradicted by Plaintiff's unrefuted testimony and by Defendant's own actions seen in its security video clip showing Defendant's employee mopping a large area of the floor where Plaintiff fell immediately after interviewing the Plaintiff and placing a bright yellow cone warning patrons of a wet surface. The employee makes broad sweeping motions back and forth with the rag and wipes the floor for some distance under the edge of the refrigerated compartments. These actions belie Defendant's assertion that there was only a tiny spot of water on the floor as opposed to Plaintiff and her eyewitness' description of a twelve-inch area of water on the floor. A yellow warning cone is left in the area for several minutes after Defendant's employee wipes the floor and is later removed by Defendant's employee.

Having established that there was a liquid substance on the polished concrete floor, that the presence of such substance created an unreasonable risk of harm, and that the substance was present for a lengthy period of time prior to Plaintiff's fall, it remained only for Plaintiff to show that Defendant had sufficient time and opportunity to remedy the hazard but failed to do so.

> As stated in *White*, there is no "bright line time period" required, and the time period need not be in specific minutes or hours. All that is required is that the substance be present for "some period of time" prior to Ms. Lewis's accident. The surveillance video shows that, one minute after Ms. Lewis entered the tiled walkway in front of Harrah's buffet, her leg slipped out from under her and she fell. The video shows that within seconds of the accident, Ms. Lewis's son and husband rushed over to help her, and both testified that they saw the foreign substance on the floor and her shoe. Ms. Lewis testified that she saw "little white stuff" on the floor. She also said that when Mr. Parkman came over immediately to help her, he told her that she had slipped on a "smushed grape." Ms. Mayshack, the Harrah's supervisor stated that she was called over by Mr. Parkman after the fall, and she saw a substance like "melted cheese" on the floor. And because Ms. Lewis's slip and fall, and the witnesses' observations of the foreign substance, occurred within seconds of each other, we disagree with Jazz Casino's contention that post-accident evidence is insufficient to establish that the substance was on the floor for "some period of time" before the accident. *See Davis v. M & E Food Mart, Inc.*, 02-0585, p. 2 (La. App.

4

3 Cir. 10/30/02), 829 So.2d 1194, 1196 (reversing summary judgment where defendant's employees testified that they saw a "smashed" grape on the floor when they went to help the plaintiff "immediately" after her slip and fall).

It may be reasonably inferred from this circumstantial evidence that the foreign substance was on the floor for "some time period" before Ms. Lewis's fall. That is all the Supreme Court requires.

We conclude, therefore, that Ms. Lewis has satisfied the "prerequisite showing of some time period." *White,* 97–0393, p. 4, 699 So.2d at 1084.

*Lewis*, 245 So.3d 73–76.

The video also reveals that several of Defendant's employees walked through the area where plaintiff fell a total of twelve times in the seventy-minute videotaped time frame preceding Plaintiff's accident but failed to address the hazard. Defendant's witnesses admit the presence of water or a clear liquid on the polished concrete floor presents a hazard to shoppers like Plaintiff. Byron J. Hebert (Hebert), assistant store manager, describes the floor as polished concrete with no texture. Mark Cortina (Cortina), assistant store manager, testified in deposition "any substance on the floor, especially a liquid substance, is a hazard."

Defendant also admits it has a policy in place requiring its employees to check the floor frequently to ensure they are free of hazards to patrons. Cortina testified in deposition:

We make perimeters every hour. We make center store walks at least every two hours. And that's each actual manager on duty. Like, it's my job to walk it every hour, however, the other assistant manager of the director has to do the same thing as well. And it might be ten minutes after me. It might be forty-five minutes after me. We're required to do so. Basically, we do that consistently… We'll walk and assess repetitively.

Defendant's employee, Shane Haywood (Haywood), is seen on the video nine times in the area of Plaintiff's fall. During a forty-five-minute time period prior to Plaintiff's fall Haywood appears in the area five times and each time walks past a

piece of paper on the floor, at one point nearly stepping on it, before he finally picks it up and disposes of it. None of the other employees traversing the area for a period of some seventy minutes appear to pay any attention to the floor as they engage in various activities in the area where Plaintiff fell. Defendant's employees are seen in the video opening and closing the glass doors on the refrigerated compartments. Employees are seen stepping up onto the rim to reach into the refrigerated compartments and holding the doors open for various lengths of time. One employee is seen in the area with a stock cart as he restocks a display in the center of the aisle. Employees assist customers in the area with finding items in the refrigerated compartments and pass through the area with a shopping cart. On none of these twelve occasions does any employee appear to survey the area or in any manner look at or examine the floor for safety hazards. None of these employees make any attempt to wipe the floor or warn shoppers to avoid the area. We find, as did the trial judge, that these facts demonstrate Defendant had constructive notice of the hazard and had more than a reasonable amount of time to remove the hazard. Defendant failed to exercise reasonable care in fulfilling its duty to "keep [its] aisles, passageways, and floors in a reasonably safe condition. *This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.*" La.R.S. 9:2800.6(A).

In *Patin v. Evangeline Downs of Louisiana, Inc.*, 08-988 (La. App. 3 Cir. 2/4/09), 3 So.3d 638, a panel of this court composed of Chief Judge Ulyssess Gene Thibodeaux, Elizabeth A. Pickett and Billy Howard Ezell, found the plaintiff established the elements of constructive notice. The plaintiff in *Patin* showed that she slipped and fell on food left on the floor near the buffet on a busy Friday night. There, the plaintiff showed that the area was understaffed that night and that no one had checked the area for food on the floor for about one hour and forty-five minutes,

contrary to the casino's policy. The casino argued that Ms. Patin failed to show the amount of time the beet she slipped on was on the floor. This court found:

> The evidence was clear that Friday nights at the Cajun Buffet were the busiest because it was a seafood buffet. The buffet area seats about 275 people. This was established by the testimonies of Mr. Melancon and Ms. Poole in addition to Freida Carmouche, a buffet server. They all testified that food would spill on the floor.

> At the time of the accident, Mr. Melancon had been a shift supervisor in the buffet for seventeen days. He testified that it was usually the bussers' job to keep the floor clean but everybody is supposed to watch for food on the floor on Friday nights. Mr. Melancon also testified that it was not uncommon to be shorthanded on weekends and, on this particular night, he was short one cashier, one server, and one busser.

> Both Mr. Melancon and Ms. Carmouche testified that there were training and procedures in place about picking up spills immediately. Mr. Melancon remembered security telling him to check the floors every forty-five minutes, especially on Friday nights. However, he does not remember if inspections of the floor occurred on the night of Ms. Patins' fall. He further testified that it could have been as long as one hour and forty-five minutes before the floor was inspected on Friday night. Mr. Melancon was of the opinion that there needed to be more staff on Friday nights due to the high volume of customers.

> There was also testimony that there were mats by the cashiers' station, the entrance into the busing area, and by the ice cream stand. However, there were no mats next to the buffet line. The floor near the buffet line was a tile floor.

> In ruling that Ms. Patin established Evangeline Downs had constructive notice of the beet on the floor, the trial judge found that an hour to an hour and forty-five minutes was an inadequate amount of time before an inspection was made. He also considered the lack of staff which contributed to the lack of adequate inspections.

> Given the testimony at trial, we cannot say the trial judge's conclusion was manifestly erroneous. It is clear that, on this particular night, the buffet was extremely busy. Food would obviously be spilled on the floor, and we agree with the trial judge that an hour and forty-five minutes is an extremely long time to wait in between inspection of the floors. Ms. Patin clearly met her burden of proof that the beet was on the floor for an unreasonable amount of time. *We do not agree that Ms. Patin has to actually show how long this particular beet was on the floor. If that was so, then there would be no need for constructive knowledge.* Ms. Patin has established that inspection procedures on this particular Friday night in addition to an inadequate staff contributed to food remaining on the floor longer than reasonable.

*Patin*, 3 So.3d at 640 (emphasis added).

In *Blackmun v. Brookshire Grocery Company*, 07-348 (La.App. 3 Cir. 10/3/07), 966 So.2d 1185, this court found that three minutes was a sufficient amount of time for the merchant to exercise reasonable care in discovering and cleaning up a spill. *Id.* at 1189. The court rejected Super One's argument in *Blackmun* that the fact five or six of its employees had been in the vicinity of the spill just prior to the plaintiff's fall did not satisfy that plaintiff's burden to prove constructive notice. *Id.* at 1190. Super One also asserted that its violation of store policy by failing to inspect the aisle where Plaintiff fell for over two hours was insufficient to establish constructive notice. The panel in *Blackmun*, relying on this court's reasoning in *Moore v. Brookshire Grocery Co.*, 01–737 (La.App. 3 Cir. 1/16/02), 805 So.2d 446, *reversed,* 02–525 (La.6/21/02), 824 So.2d 345, agreed with plaintiff's argument that *all of these facts taken together* strongly supported a finding of constructive notice and imposition of liability on Super One. *Id.* at 1191. In rejecting Super One's argument that the trial court's emphasis on Super One's failure to follow its own policy formed an insufficient basis to find constructive notice this court explained:

> We are mindful that La.R.S. 9:2800.6(B)(3) clearly states that in determining whether the merchant failed to use reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care. However, whether a merchant has a safety policy, whether that policy specifically provides how often employees are to inspect for unsafe conditions, and whether any such policy was violated are certainly relevant questions, the answers of which significantly aid a trial court in determining whether a merchant failed to exercise reasonable care.
>
> Mr. Mondell, the assistant manager on duty at the time of Mr. Blackman's accident, testified that Super One had a policy regarding floor care and maintenance, but that policy did not specify how often the aisles needed to be inspected. He further testified that his personal

preference was to check the aisles every thirty to forty-five minutes. It was Mr. Mondell's responsibility to fill out an accident report regarding Mr. Blackman. Part of that responsibility was determining which employee had last inspected the area where Mr. Blackman fell. Mr. Mondell testified that he had been the last employee to inspect the area and that his inspection took place two and one-half hours prior to the accident.

Mr. Mondell testified that when he followed Mr. Blackman to the area of his slip and fall, he noticed a red substance on the floor which appeared to be picante sauce. He stated that as he cleaned the spill, he found a piece of broken glass which he considered to be the bottom of a glass container.

We are convinced that the trial judge was correct in concluding, based upon the totality of the evidence presented, that Plaintiffs met their burden of proving that Super One had constructive notice of the unsafe condition that caused Mr. Blackman's injury.

*Blackman*, 966 So.2d at 1190–91.

Likewise, here Plaintiff established that Defendant's employees did not adhere to its policy to inspect the aisles for hazards at least every sixty minutes. Cortina testified he repeatedly checked the aisles for hazards every hour and other assistant managers checked the aisles in overlapping time segments. As can be seen on Defendant's security video, Defendant's employees visited the area of Plaintiff's fall twelve times in seventy minutes but on none of those occasions can they be seen observing or inspecting the floor for hazardous substances. In fact, one of the same employees ignores trash on the floor four times in forty-five minutes before picking it up, having walked right past the piece of paper several times earlier. All of the evidence presented by Plaintiff, both direct and circumstantial, in support of her motion for summary judgment on liability support a finding that Defendant had constructive notice of the hazardous condition and failed to exercise reasonable care to remedy the situation.

For these reasons, we affirm the trial court ruling. Costs of this proceeding are assessed against Defendant. The case is remanded to the trial court for further proceedings.

**WRIT DENIED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

19-322

SHEILA M. GUIDRY

VERSUS

BROOKSHIRE GROCERY COMPANY, ET AL.

THIBODEAUX, Chief Judge, dissenting.

Despite acknowledging the summary judgment status of this proceeding, the majority proceeds to treat Plaintiff's submission of her factual inferences as irrefutable gospel truth. That just isn't so given the posture of this record. Our court has always addressed "the long-standing rationale that '[a] motion for summary judgment is rarely appropriate for a determination based on subjective facts, such as . . . knowledge[.]" *Id.* at 242 (citation omitted). In any event, this court has long held that "[q]uestions of negligence are generally inappropriate for disposition by summary judgment." *Cobb v. Delta Exports, Inc.*, 03-33, p. 4 (La.App. 3 Cir. 6/4/03), 847 So.2d 739, 742, *writ denied*, 03-1906 (La. 10/31/03), 857 So.2d 483.

Louisiana Revised Statutes 9:2800.6 provides that in negligence claims brought against a merchant as a result of a fall due to a condition existing on the merchant's premises, the plaintiff shall have the burden of proving *all* of the following elements:  (1) the condition presented an unreasonable risk of harm that was reasonable foreseeable; (2) the merchant either created or had actual or

constructive notice of the damage-causing condition prior to the occurrence; and (3) the merchant failed to exercise reasonable care. La.R.S. 9:2800.6(B). Given Brookshire's admissions, the parties do not dispute the presence of a liquid in the aisle which led to the creation of an unreasonable risk of harm.

Having purportedly satisfied the first element, the trial court then agreed with Plaintiff's next assertion that the evidence adduced was sufficient to prove that Brookshire had constructive notice of the liquid on the floor. The merchant liability statute defines constructive notice as meaning that "the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care." La.R.S. 9:2800.6(C)(1). Moreover, "[t]he presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition." *Id.* In *White v. Wal-Mart Stores, Inc.*, 97-393 (La. 9/9/97), 699 So.2d 1081, our supreme court interpreted constructive notice as necessarily including a temporal element by virtue of its explicit language, "for such a period of time[.]" Specifically, it held:

> The statute does not allow for the inference of constructive notice absent some showing of this temporal element. The claimant must make a *positive showing* of the existence of the condition prior to the fall. A defendant merchant does not have to make a positive showing of the absence of the existence of the condition prior to the fall. Notwithstanding that such would require proving a negative, the statute simply does not provide for a shifting of the burden.
>
> Though there is no bright line time period, a claimant must show that "the condition existed for such a period of time . . ." . . . A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as

2

> mandated by the statute. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. This is not an impossible burden.

*Id.* at 1084-85 (emphasis added) (footnote omitted). In order to make such a showing, it is generally accepted that a claimant may rely on both direct and circumstantial evidence to establish the temporal element of constructive notice. *Ceasar v. Wal-Mart Stores, Inc.*, 00-1181 (La.App. 3 Cir. 6/6/01), 787 So.2d 582, *writ denied*, 01-1899 (La. 10/26/01), 799 So.2d 1143.

Despite Plaintiff and her sister admitting that they had no knowledge as to where the liquid came from or how long it had been on the floor, the trial court explicitly recognized that "plaintiff cannot show how the puddle was created," yet found that Plaintiff "unequivocally shows the puddle existed at least 70 minutes prior to her fall." However, a review of the evidence reveals that the only "showing" made by Plaintiff in demonstrating that the liquid was present for some period of time was a mere inference drawn from the video footage that because no liquid was seen being spilled in the seventy minutes of footage before the fall, and that this was "the only explanation" of how the liquid got on the floor, then the liquid must have gotten there more than seventy minutes before the fall.

In my view, the trial court incorrectly granted summary judgment for a number of reasons. First, beyond stating her inference *ad nauseum*, Plaintiff offered no proof, positive or otherwise, that the liquid was present for more than seventy minutes before the fall. In fact, the totality of the evidence appears to directly contradict Plaintiff's assertion; in light of all the consistent testimony that the puddle of liquid remained clear of dirt, footprints, and buggy tracks despite being traversed by such extensive traffic in the seventy minutes of footage before the fall alone, I

3

find that it is simply untenable to infer from this "circumstantial evidence" offered that the hazard existed for the time period that Plaintiff alleges. Moreover, the video footage shows two separate families with buggies, stop, shop, and leave, with no issues or seeming awareness of liquid on the ground, from the exact area where Plaintiff would fall a mere seven to eight minutes later. "Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a *fact question*; however, there remains the *prerequisite* showing of some time period." *White*, 699 So.2d at 1084 (emphasis added). Thus, even accepting Plaintiff's bare assertion *arguendo* as a sufficient prerequisite showing of some time period, it is submitted that the factual question presented in determining whether that time frame is sufficient that the merchant should have noticed a hazard necessarily precludes disposition by summary judgment by its very nature. The following colloquy between Plaintiff's counsel and the trial court illustrates not only Plaintiff's lack of any positive evidence, but also the inherent factual nature of the issues presented:

> MR. DE MAHY: The dispute between the parties is when did the substance get there and how did it get there. It's our contention that it doesn't make any difference how it got there, *because it got there in such a length of period of time – it had been there for such a length of period of time it doesn't make any difference how it got there because it was there for that period of time*.

> YOUR HONOR: But that was one of my questions, too, is does the law require you to prove how, just that it was there for a long period of time and that the grocery store should have had a notice of intent [sic]?

> MR. DE MAHY: *If* we can prove it has been there for seventy minutes, it doesn't make any difference how it got there, whether an employee spilled it or a customer spilled it. *If* it's been there for that length of time, it's a hazardous condition and the store has the obligation to remove it.

4

*Id.* at p. 275-76 (emphasis added). Reviewing the totality of the evidence de novo, Plaintiff simply failed to prove this temporal element; thus, a finding that she established constructive notice on the part of the merchant was rendered in error.

Second, it was improper for the trial court to accept Plaintiff's argument that someone spilling the liquid over seventy minutes prior to the fall was the only explanation for how it came to be there, especially after acknowledging that no one had any knowledge of how the liquid got onto the floor which, again by its nature, presents a factual question not appropriate for summary judgment. While two Brookshire employees testified that they had no knowledge of any leaks or condensation issues with the refrigeration units, one of them further stated: "There are various ways water could get on the floor, not necessarily from a customer spilling it. It could come from wet produce. . . . there are various forms that water could come on a floor, not necessarily. . . from a refrigeration [sic] or a customer." Additionally considering that Plaintiff and her sister, Judy, testified that the size of the puddle ranged from twelve to eighteen inches, while Mr. Cortina testified that it appeared to him to be smaller than the size of a fist, this conflicting testimony about a material fact also suggests that summary judgment was inappropriate. To conclude that no genuine issues of material fact exist here is inconsistent with the statutory requirements and developed jurisprudence.

For the foregoing reasons, I respectfully dissent.