STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

03-982

LEE SAVOIE, INDIVIDUALLY, ET AL.

VERSUS

SOUTHWEST LOUISIANA HOSPITAL ASSOC., ETC.

**********
APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2000-3862
HONORABLE PATRICIA MINALDI, DISTRICT JUDGE
**********

**GLENN B. GREMILLION**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Glenn B. Gremillion, Judges.

REVERSED AND REMANDED.

Rex D. Townsley
The Townsley Law Firm
3102 Enterprise Blvd.
Lake Charles, LA 70601
(337) 478-1400
Counsel for Plaintiff/Appellant
     Lee Savoie
     Ruth Savoie

**Thomas E. Townsley**
**711 Pujo Street**
**Lake Charles, LA 70601**
**(337) 430-0994**
**Counsel for Plaintiff/Appellant**
      **Lee Savoie**
      **Ruth Savoie**

**L. Paul Foreman**
**Raggio, Cappel, Chozen, & Berniard**
**P. O. Box 820**
**Lake Charles, LA 70601**
**(337) 436-9481**
**Counsel for Defendant/Appellee**
      **Southwest Louisiana Hospital  Assoc.**

GREMILLION, Judge.

The plaintiffs, Lee and Ruth Savoie, appeal the judgment of the trial court granting summary judgment in favor of the defendant, Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Hospital, and dismissing their claims with prejudice. For the following reasons, we reverse and remand.

## FACTS

On August 23, 1999, the Savoies were at Memorial Hospital so that Ruth could undergo therapy for congestive heart failure. They were traversing the second-floor closed-in walkway connecting the hospital to the parking garage when Lee's right foot stuck to the floor, causing him to fall.

The Savoies filed suit against Memorial Hospital seeking damages for Lee's injuries. Memorial Hospital answered their petition and then filed a motion for summary judgment arguing that the Savoies could not show the presence of any defect in the floor or that it knew or should have known of any defect. Following a hearing on the motion, the trial court held that the testimony of the Savoies created a material issue of fact on the issue of a wax buildup on the floor. However, it held that there was no evidence to show knowledge or constructive knowledge on the part of Memorial Hospital with regard to the buildup. Accordingly, it granted Memorial Hospital's motion for summary judgment. A judgment was rendered in this matter dismissing the Savoies' claims with prejudice on April 29, 2003. This appeal by the Savoies has followed.

## ISSUE

On appeal, the Savoies argue that the trial court erred in finding that they had to prove that Memorial Hospital had actual or constructive notice of the alleged

2

wax buildup on the floor.

## SUMMARY JUDGMENT

The law pertaining to summary judgment is well settled. Summary judgments are reviewed de novo. *Magnon v. Collins*, 98-2822 (La. 7/7/99), 739 So.2d 191. Thus, appellate court asks the same questions the trial court asks to determine whether summary judgment is appropriate. *Id.* This inquiry seeks to determine whether any genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B), (C). Judgment will be rendered in the movant's favor if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show a lack of factual support for an essential element of the opposing party's claim. *Id.* If the opposing party cannot produce any evidence to suggest that he will be able to meet his evidentiary burden at trial, no genuine issues of material fact exist. *Id.*

## MERCHANT LIABILITY

In order to maintain a trip and fall action against Memorial Hospital, the Savoies must prove, in addition to duty, breach, cause-in-fact, and damages, the requirements contained in La.R.S. 9:2800.6:

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

In support of its motion for summary judgment, Memorial Hospital

3

presented deposition and affidavit testimony from several of its employees attesting to the fact that no foreign substance, such as a liquid, was found at the site of Lee's fall on the date of the accident. There was further testimony that there was no "hot spot," at that location, which would have caused him to slip. The employees further testified that there was nothing at the scene of the fall to put them on notice of a problem with the floor. Lisa Nugent, Memorial Hospital's director of housekeeping and linen, testified that the floors at the hospital are stripped and waxed approximately every twelve to fifteen months. Nugent and Henry Jefferson, a housekeeping lead, further testified that Memorial Hospital's floors are maintained by housekeeping and they described the various methods in which the floors are cared for, including stripping and waxing, restoring, spraying and buffing, mopping, and dust mopping.

In opposition to the motion, Lee and Ruth both testified that they believed a heavy wax buildup on the floor caused the accident. Lee testified that he was walking down the walkway, talking to Ruth, when his right foot stuck to the floor. He stated that his action of jerking his foot up made his body swing around to the left, causing him to fall to the floor on his left side. He stated that there was nothing about the floor's looks which would have warned him that there was a problem with it. He stated that he was wearing shoes with a rubber sole, and that he had never had a problem with his shoes sticking or with him falling prior to the accident.

Ruth testified that she noticed that the floor looked shiny while they were walking out of the hospital. She stated that she was wearing athletic shoes on the date

4

in question, and that she had no trouble with her shoes sticking to the floor that day. She further testified that there was no foreign substance on the floor, such as water or dried coke. She stated that there was nothing about the floor that day that alerted her that something was wrong with it.

The Savoies further presented the affidavit of Dr. Gary Nelson, an expert in the areas of safety engineering, safety management, human factors engineering, and occupational health engineering. He testified that he personally examined the corridor at issue on November 2, 2000, in addition to the evidence presented in support of and in opposition to the motion. After examining the corridor, Dr. Nelson stated that he observed an obvious long-term buildup of wax, which indicated that the floor had not been stripped and refinished on a timely basis. He further stated that, if such a condition existed on August 23, 1999, it could have rendered the walkway unreasonably dangerous. He testified that a failure to timely strip a floor could lead to a buildup of floor treatment materials, and that the difficulty of buffering such a floor could result in "a patchwork of potential slippery and/or sticky sections of flooring." Dr. Nelson stated:

> In this regard, with the understanding that the area where Mr. Lee Savoie fell was a high traffic area, and that a variety of cleaners, disinfectants, and restorers are applied to the floor on a regular basis, the practice of stripping and waxing the floor every 12-18 months would not be timely to prevent the buildup of such materials to result in a flooring of non-uniform slip resistance.

Dr. Nelson further dissected the process of walking and ultimately concluded that a sticky floor "that causes a person's foot to be momentarily slowed or lag behind in regard to its necessary placement to maintain balance as the upper body center of gravity moves forward beyond its base of support can result in a form

5

of trip-type fall." Finally, he opined that Memorial Hospital controlled and maintained the floor which caused Lee's accident, thus, it had constructive knowledge of the unreasonably dangerous condition of the floor.

After conducting a de novo review of the evidence, we find that the Savoies have presented evidence sufficient to raise a genuine issue of material fact with regard to a possible wax buildup causing Lee to fall. Since Memorial Hospital maintains its own floors, the Savoies are not required to prove that it had notice or constructive notice of the possible buildup. If there was a buildup, Memorial Hospital created it, thus, the notice requirement of La.R.S. 9:2800.6 does not apply, as held by the trial court. Accordingly, the judgment of the trial court granting summary judgment in favor of Memorial Hospital is reversed and the matter is remanded for further proceedings.

**CONCLUSION**

For the forgoing reasons, the judgment of the trial court is reversed and the matter is remanded for further proceedings. The costs of this appeal are assessed to the defendant-appellee, Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Hospital.

**REVERSED AND REMANDED.**