# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30643

United States Court of Appeals
Fifth Circuit

**FILED**

March 8, 2017

Lyle W. Cayce
Clerk

LORING DESHOTEL, As Administratrix of the Estate of Amanda Riggio, Substituted in Place and Stead of Amanda Riggio, Deceased,

Plaintiff–Appellant,

versus

WAL-MART LOUISIANA, L.L.C.,

Defendant–Appellee.

Appeal from the United States District Court
for the Western District of Louisiana

Before SMITH, CLEMENT, and SOUTHWICK, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Amanda Riggio[1] slipped and fell in a Wal-Mart store in September 2012. She sued, alleging that she had slipped on water that had leaked onto the floor from a negligently maintained roof.  The district court entered a summary

---

[1] Riggio was the original plaintiff but died, so her administratrix, Loring Deshotel, was substituted.  For the sake of clarity and brevity, we refer to the plaintiff as "Riggio."

No. 16-30643

judgment in Wal-Mart's favor.  Finding multiple disputes of material fact, we reverse and remand.

I.

A.

This incident is relatively quotidian.  While shopping, Riggio slipped and fell.  Her sister witnessed the fall.  Lorraine Johnson, a Wal-Mart employee who may or may not have been present at the fall but was certainly there immediately thereafter, retrieved a wheelchair in which Riggio left the store. Her sister took her to an emergency room.

Also responding was Anthony Chester, the manager, who filed an incident report that recorded the area in which Riggio slipped as "clean," though with "small drops of water" on it, and indicated that the weather was  "rainy." The source of the water was listed as "unknown."

Both parties acknowledge that the store had roof leaks but differ as to their scope and frequency; Riggio suggests they were occurring all over the store, but Wal-Mart claims they were confined to a few discrete areas where new skylights had been installed.  Wal-Mart also maintains that there is no evidence that the water came from the roof; Riggio, unsurprisingly, disagrees.

B.

Riggio asserts that she slipped on water from the leaking roof, which Wal-Mart had negligently maintained, and thus is entitled to damages.  The relevant law in this diversity case is Louisiana Revised Statutes § 9:2800.6 (B), which requires, in pertinent part, that

> [i]n a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in

2

No. 16-30643

addition to all other elements of his cause of action, all of the following:

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

In its motion for summary judgment, Wal-Mart averred only that Riggio could not satisfy the second prong—that is, that she could show neither that Wal-Mart created the condition that caused her fall nor that it had actual or constructive notice of the offending water. Riggio opposed summary judgment by contending that Wal-Mart created the hazard and had constructive notice of it.[2]

## II.

This court reviews a summary judgment *de novo*. *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is called for only "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Genuine disputes of material fact are present where a reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When reviewing a summary judgment, we construe all facts and inferences in favor of the nonmoving party. *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012).

---

[2] Riggio has abandoned this second argument and challenges the district court's decision only in regard to the creation of the hazard.

No. 16-30643

III.

The two pertinent questions are, first, whether Riggio has provided enough evidence that a reasonable jury could find that she slipped on water that leaked through the roof, and second, whether Wal-Mart's purportedly negligent maintenance of the roof could suffice to show that it "created . . . the condition which caused the damage" under Section 9:2800.6. Because we answer both questions in the affirmative, we reverse and remand.

A.

The parties tell different stories regarding the cause of Riggio's fall. In Wal-Mart's account, she cannot establish where she fell. The store did have roof leaks, but they were in discrete locations—only under faultily installed skylights—and had been mended before the accident. In other words, according to Wal-Mart, Riggio cannot establish where she fell, but in any event it was not under a skylight.

Riggio claims, to the contrary, that the store was plagued by a chronically leaky roof. It had been leaking since at least the beginning of 2012, had sprung new leaks with some regularity, and had continued to leak up to the day of Riggio's injury. Indeed, it was a previously unidentified leak that caused the accident—how else to explain the water on the floor? And only after her fall did Wal-Mart fully fix the leaks.

At the summary-judgment stage, we decide only whether Riggio's account is plausible enough that a reasonable jury could believe it. *Cf. Anderson*, 477 U.S. at 248. Because there are disputes of material fact, a jury could so believe.

The first dispute is over the weather. Riggio testified that it was damp outside, suggesting that it had recently rained. Her sister said that it had not rained that day but had been raining on preceding days. The incident report,

filled out the day of the accident, listed the weather as "rainy." If it had been raining the day of Riggio's fall, that would suggest that leaks from the roof would have been more likely to occur.

The facts are also uncertain as to how long the leaks had persisted. Wal-Mart claims they began in May 2012, when the new skylights were installed. But Chester's testimony suggests that the leaks predated the installation of the new skylights; he stated unequivocally that the leaks were a problem when he started his job in February 2012, even though the new skylights were not fitted until May. His testimony additionally suggests the roof was leaking on the day of Riggio's injury. And there are photographs in the record, purportedly from that day, showing buckets and caution signs in various parts of the store.[3] It would be odd for Wal-Mart to have continued to put out these implements if there was not concern that the roof continued to leak.

The final, and key, dispute concerns the extent of the leaks. Wal-Mart maintains they were confined to specific areas of the store—that they stemmed from the installation of new skylights and were only in specific locations. But the record also provides support for a generally leaky roof. Chester testified that there were "leaks throughout the building," as distinguished from the isolated areas that Wal-Mart suggests were the only trouble spots.

More importantly, Chester suggested that the building was springing new leaks during that time, stating the new leaks were a "known issue" and that "anybody in the building . . . would be on the lookout for new leaks that had not been identified or marked" when it rained. Moreover, there is a document, dated August 2012, that shows that Wal-Mart billed a roofing

---

[3] Riggio claims the buckets and caution signs were near the site of her incident, but Wal-Mart disagrees—another dispute.

contractor for something called "roof recover." At oral argument, Wal-Mart was unable to explain what "roof recover" meant, but a reasonable jury could conclude that such a bill suggests repairs to the entirety of the roof, as opposed to the comparatively minor skylight installations and repairs Wal-Mart has said were made.

Additionally, Riggio offered the expert affidavit of Steven Arabie, who testified that the roof was "losing its ability to prevent rain water from leaking into the building." He based that opinion on his many years' professional experience as a roofing contractor, his review of Chester's testimony, and the records indicating that the roof was about twenty years old, near the end of its effective lifespan. The district court dismissed Arabie's affidavit solely on the ground that Arabie had never inspected the roof of this particular store.

But there is no requirement that an expert derive his opinion from "first-hand knowledge or observation." *See Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 876 (5th Cir. 2013) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993)). Indeed, the expert testimony in *Wellogix* was startlingly similar to the evidence here: The expert based his testimony purely on his industry experience and his review of a deposition, and we held that a jury could reasonably credit his testimony. *Id.*

A useful contrast can be drawn between the evidence here and the evidence in *Bearb v. Wal-Mart La., L.L.C.*, 534 F. App'x 264 (5th Cir. 2013) (per curiam). There, the only evidence that a leaky skylight created a puddle on the floor was "speculation and [the plaintiffs'] own unsubstantiated statements." We affirmed summary judgment. *Id.* at 265.

Here, by contrast, a jury could choose to credit both Arabie's opinion and Chester's testimony with regard to the fact that the roof was springing new leaks, even outside the area of the new skylights. And a reasonable jury could

also conclude that it was raining, or at least had rained recently, on the day of Riggio's fall. The only inference left for the jury would be to conclude that the "small drops of water" stemmed from the generally leaky roof. There is no direct evidence on this point, but the summary-judgment standard requires that we construe inferences in favor of the nonmoving party, *McFaul*, 684 F.3d at 571, and it is no great logical leap to conclude that a generally leaky roof on a rainy day may have been the cause of otherwise unexplained water on the floor.

In other words, a reasonable jury could find that the leaking roof caused Riggio's fall. That is enough for her to survive summary judgment on this point.

## B.

The next question is whether potentially negligent maintenance of a roof can qualify as "creation" of a hazard under Louisiana law. Both this court and Louisiana state courts have repeatedly considered what precisely constitutes creation of a hazardous condition.

"[T]he wording of [§ 9:2800.6(B)(2) ] . . . means there must be proof that the merchant is directly responsible for the spill or other hazardous condition." *Ross v. Schwegmann Giant Super Markets, Inc.*, 734 So. 2d 910, 913 (La. 1st Cir.), *writ denied*, 748 So. 2d 444 (1999). When a defendant "maintains its own floors, the [plaintiffs] are not required to prove that it had notice or constructive notice of the possible [hazard]. If there [is] a [hazard], [defendant] created it, thus, the notice requirement of La. R.S. 9:2800.6 does not apply . . . ." *Savoie v. Sw. La. Hosp. Ass'n¸* 866 So. 2d 1078, 1081 (La. 3d Cir. 2004). We have held similarly to *Savoie*, suggesting that "courts have required proof that an employee's action caused the plaintiffs' injury" to impose liability under § 9:2800.6, and that because "[a]ppellants pointed neither the district court nor

7

this court to any evidence showing that [the defendant's] employees were responsible for the holes in [the defendant's] roof, nor any evidence showing that [the defendant] was responsible for maintaining its own roof," the plaintiff failed to show that the defendant created the hazard at issue. *Gray v. Wal-Mart La., L.L.C.*, 484 F. App'x 963, 966 (5th Cir. 2012) (per curiam).

Synthesizing these cases, it is evident that for the defendant to have "created" the hazardous condition, it must be "directly responsible" for the plaintiff's injuries. *Ross*, 734 So. 2d at 913. That direct responsibility can be shown in one of two ways—either via evidence that the defendant's employees actually created the hazard (by, for example, spilling crab salad on the floor, as was alleged in *Ross*) or evidence that the defendant was responsible for maintaining the area where the hazardous condition was manifest, as in *Savoie* and *Gray*.

Wal-Mart tries to elide this distinction in two ways. First, it posits that the law requires that it must have had notice of the condition no matter what. But that is not so, as *Gray* and the plain meaning of the statute make clear; plaintiffs must prove *either* creation of the hazard *or* actual or constructive notice thereof. There is no requirement of notice when it comes to creation of the hazard.

Second, Wal-Mart theorizes that because the particular hazard that caused Riggio's injury emerged not through direct action by its employees but rather through a failure to remedy a dangerous condition, Wal-Mart was not "directly responsible" within the meaning of *Ross*, *id.* Wal-Mart seems to think that so long as its employees did not personally create the leaks—by, say, making holes in the roof to affix some object—Wal-Mart escapes liability under the statute. To hold otherwise, it urges, would be to convert the statute into "strict liability."

We do not read the statute so harshly. The ordinary meaning of "creation" admits of creation both through direct action—pounding holes into the roof with hammers—and failure to act—e.g., a failure to fix a known leaky roof, leading to the creation of hazardous puddles on the floor. And the claim that we would be reading strict liability into the statute significantly over-states the hardship to Wal-Mart, for several reasons.

First, of course, there is the procedural posture of this case, which Wal-Mart avoids. By reversing the summary judgment, we only permit a jury to find that Wal-Mart created the hazard; we make no such finding ourselves. Second, there are other provisions in the statute, which are not at issue on this appeal, that a plaintiff must satisfy before a defendant can be held liable—namely, that the condition created an unreasonable risk of harm and that the defendant failed to exercise reasonable care. *See* LA. REV. STAT. ANN. § 9:2800.6(B).

Finally, Louisiana precedent is explicit that Wal-Mart's notion is incorrect. *See Savoie*, 866 So. 2d at 1081 (holding that because the defendant maintained the floors on which the hazard occurred, it created the hazard). Maintenance, under Louisiana courts' interpretation of Louisiana law, is enough for creation. And Wal-Mart has not provided reasons for us to disregard that legal reality.

This case is close to *Gray*. But there, the plaintiff's case was deficient because the record provided evidence neither that the store was responsible for the maintenance of its own roof nor that employees had caused the roof leak. *Gray*, 484 F. App'x at 966. Evidence satisfying either of those conditions would have sufficed to deny summary judgment. Here, by contrast, there are billing records showing that Wal-Mart paid for repairs on the roof near the date of Riggio's fall, as well as evidence that Wal-Mart paid for a full roof repair after

No. 16-30643

Riggio's injury.  We agree with *Gray* that evidence of "maint[enance of] its own roof" is enough to conclude that Wal-Mart created the hazardous condition through its failure of maintenance.  A reasonable jury could find that evidence here.

The summary judgment is REVERSED and REMANDED.  We place no limitation on the matters the district court may address and decide on remand, nor do we suggest what are the ultimate merits of Riggio's claim.