| | |
|---|---|
| BRIDGET S. SALZMAN | NO. 22-CA-404 |
| VERSUS | FIFTH CIRCUIT |
| MATHERNE'S SUPERMARKET AT RIVERLANDS, L.L.C. & STATE FARM FIRE & CASUALTY COMPANY | COURT OF APPEAL<br><br>STATE OF LOUISIANA |

ON APPEAL FROM THE FORTIETH JUDICIAL DISTRICT COURT
PARISH OF ST. JOHN THE BAPTIST, STATE OF LOUISIANA
NO. 73,819, DIVISION "C"
HONORABLE J. STERLING SNOWDY, JUDGE PRESIDING

June 22, 2023

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and John J. Molaison, Jr.

**REVERSED AND REMANDED**
 **FHW**
 **JGG**
 **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
BRIDGET S. SALZMAN
    William E. Mura, Jr.
    Delaney P. Shea
    Warren A. Forstall, Jr.

COUNSEL FOR DEFENDANT/APPELLEE,
MATHERNE'S SUPERMARKET AT RIVERLANDS, LLC AND STATE FARM
FIRE AND CASUALTY COMPANY
    Leonard M. D'Angelo

**WICKER, J.**

This case involves a slip and fall in a grocery store that occurred during business hours and allegedly caused by a liquid substance puddled on the floor of the grocery store aisle. Plaintiff Bridget Salzman ("Ms. Salzman") sued Defendants, Matherne's Supermarket at Riverlands, LLC ("Matherne's Supermarket) and State Farm Fire and Casualty Company ("State Farm") (collectively "Defendants") for injuries she allegedly sustained as a result of the slip and fall. Matherne's Supermarket and its insurer filed a motion for summary judgment alleging that pursuant to the Merchant Liability Statute, La. R.S. 9:2800.6, Ms. Salzman cannot meet her evidentiary burden at trial that Matherne's Supermarket created or had actual or constructive notice of the alleged hazardous condition that she claims caused her injuries. Evidence properly attached to the summary judgment pleadings indicates that store management was aware that liquid meat byproduct habitually leaked onto the floor throughout the grocery store and that the grocery store had taken steps to respond to the condition. Properly attached evidence also indicates that with respect to the particular incident in this case, the store had no knowledge that the liquid was puddled on the floor at the time and place where Ms. Salzman slipped and fell. On the motion of Matherne's Supermarket and its insurer, the trial court granted summary judgment and dismissed with prejudice Ms. Salzman's personal injury suit, finding no genuine issue of material fact exists that a Matherne's Supermarket employee either created the hazardous condition or that the grocery store had actual or constructive knowledge of the condition. Ms. Salzman seeks this Court's appellate review.

Applying La. R.S. 9:2800.6, on *de novo* review, for the following reasons, we find that the trial court incorrectly dismissed with prejudice Ms. Salzman's suit, as a genuine issue of material fact exists as to whether Matherne's Supermarket created the claimed dangerous condition on its premises. Accordingly, we reverse the trial

court's judgment granting summary judgment and remand the matter for further proceedings.

*FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

In May 2019, Ms. Salzman filed suit for damages against defendants, alleging that on September 18, 2018, she slipped and fell while shopping at Matherne's Supermarket in Laplace, Louisiana.

According to her deposition testimony, Ms. Salzman arrived at Matherne's Supermarket at 6:45 p.m. It was still daylight, and the weather was dry and sunny, as it had not rained that day. Ms. Salzman had shopped at the store on previous occasions and was going to the store that day only to buy milk.

Ms. Salzman testified that she entered the store on the left side, walked past the deli, and turned right at the last aisle near the refrigerated juice. She proceeded down the aisle to the back wall, where she retrieved a quart of milk. Ms. Salzman then returned down the same path, walking towards the checkout counter. As Ms. Salzman turned the corner from the juice aisle to the deli, she slipped and fell.

After she fell, Ms. Salzman saw that she had slipped on, what she described as, "kind of thick," "pink" "little puddles." She took photographs of the substance with her cell phone. Ms. Salzman testified that she did not see the puddles before she fell; she did not see how the puddles came to be on the floor; or who left them there. She further stated that she did not see any customers or employees walking ahead of her. Ms. Salzman testified that she did not know what the pink substance was that caused her to slip and fall. However, she stated that when she spoke to the store's manager the next day, he told her it was "chicken drippings." Ms. Salzman agreed that the substance she slipped on would be consistent with chicken drippings.

After Ms. Salzman slipped, Nadine Wells, the assistant manager on duty at the time of the accident, was alerted by a store employee that a customer had slipped and fallen. Ms. Wells testified in her deposition that she reported to the location of

Ms. Salzman's fall and observed a liquid substance on the floor, which she photographed with her cell phone. A store employee was then called to clean the substance from the floor. Ms. Wells testified that she reported the incident to her manager the next day.

Ms. Wells testified that she was unaware of the presence of the liquid on the floor that Ms. Salzman slipped on before Ms. Salzman fell. No one reported it to her, and no one notified her or any other employee of it. Ms. Wells testified that she did not know how the liquid came to be on the floor, who placed it there, or how long it was on the floor before Ms. Salzman fell.

Ms. Wells testified that the substance Ms. Salzman slipped on looked like "chicken juice." She testified that she did nothing further to determine what the substance was or where it came from.

Ms. Wells stated that before the incident in this case, she had seen poultry "juice drippings" on the grocery store's floor on several occasions. In fact, she testified that it was not unusual to see "juice drippings" on the floor of the store. Ms. Wells indicated that in order to address the issue, the grocery store provided plastic bags near the meat case for customers to use. She stated that customer use of the plastic bags is voluntary and that there is no customer signage or instructions for the customer's use of the bags while shopping in the store.

Scott Schwaibold, Matherne's Supermarket store manager, was not present at the store at the time the accident occurred, but recalled Ms. Wells informing him of the incident. He testified that he prepared the accident report after speaking with Ms. Wells and Ms. Salzman. Mr. Schwaibold wrote in the accident report that Ms. Salzman claimed she slipped on chicken juice; however, in his deposition testimony, Mr. Schwaibold testified that it was actually the assistant manager, Ms. Wells, who identified the substance as chicken juice. Mr. Schwaibold testified that he never determined how the liquid substance Ms. Salzman slipped on got on the floor or who

spilled it, nor did he know how long it was there. Specifically, he testified that Matherne's Supermarket did not know how long the substance had been on the floor before Ms. Salzman fell. When asked if he had been able to determine what the substance on the floor was, Mr. Schwaibold testified, "I would guess it's some kind of meat byproduct, juice. . . .[I]t could be from any kind of liquid leaking off the package, from a package of chicken." Mr. Schwaibold testified that the substance that Ms. Salzman slipped on "probably came from some kind of meat product in a customer's basket."

Mr. Schwaibold testified that the animal and seafood products the store sells are all packaged, most of which are pre-packaged. He testified that the store does repackage some of the chicken it sells, but that repackaging is limited to wings and drumettes, which arrive to the store in large boxes. Those chicken parts are then repackaged in the grocery store's butcher shop, using an automatic wrap machine that wraps the Styrofoam carton containing the soaker pad and the meat. Mr. Schwaibold was also asked if the store has a procedure for checking its packages after they are wrapped. Mr. Schwaibold testified that employees are required to "walk the case all the time." He went on to state:

> When they [sic] working the case, they know to walk it. These guys do a really good job. 'Cause kids come along and poke their fingers in there. So yeah, they always have to check. And sometimes the packages get a little wet and you got to go repackage them.
> …
> Q: …Who determines who does that and when it's done?
> A: Usually do it as they [sic] walking the case, 'cause they got a guy who works the case with a rack changing products, so he checks every product he puts out.
> Q: In front of the shelves?
> A: Yeah …

Like Ms. Wells, Mr. Schwaibold testified that the store offers plastic bags for customers to use, at their option, if they want a secondary protective measure. Nevertheless, Mr. Schwaibold indicated "leaking from meat containers is not a rare occasion." He stated: "I mean, I guess it depends on the crowd and everything, but

it happens a lot. I mean, it happens a lot. You see it every day, every other day, every couple of days. It happens more than you would think it does." Mr. Schwaibold testified that to combat the issue, store employees carry rags with them to wipe the floor.

On March 3, 2022, Defendants filed a motion for summary judgment, claiming that pursuant to La. R.S. 9:2800.6(B)(2), Ms. Salzman is unable to meet her burden of proof that Matherne's Supermarket created or had actual or constructive notice of the foreign substance upon which Ms. Salzman fell. In support of its motion, Defendants claim there is no evidence that any employee "directly caused the pink foreign substance…to be on the floor where plaintiff fell." Defendants argue Ms. Salzman did not witness any employee spill anything onto the floor and no witness has been produced to provide such testimony. Additionally, Ms. Salzman testified that she did not know how the liquid substance ended up on the floor. Defendants further argue that Ms. Salzman can not show the store had actual or constructive notice of the presence of liquid on the floor that day prior to her accident because Ms. Salzman did not see any store employee or customer walking ahead of her; the store managers testified that they were not aware of the liquid substance on the floor; they were given no notice of its presence; and the store does not know how the substance got on the floor or how long it was on the floor.

Ms. Salzman filed her opposition to summary judgment on March 25, 2022, in which she alleged that there is sufficient evidence from which a trier of fact could conclude that Matherne's Supermarket created the injury-causing condition. She averred that Matherne's Supermarket was aware that their packaged meat products, and particularly their chicken products, would leak liquid meat byproduct; that the store managers testified that observable leaking occurred almost daily; that the grocery store was aware that the liquid meat byproduct was difficult to see on the grocery store floors; and that the liquid meat byproduct would leak from customers'

baskets. Ms. Salzman argued that the evidence is sufficient for a reasonable trier of fact to conclude that Matherne's Supermarket created the injury-causing condition because it was well-aware there was a problem with the packaging of its meat products and that Matherne's Supermarket failed to adequately address or fix the problem.

Defendants then filed a reply, and on April 11, 2022, a hearing on the summary judgment motion was held. On April 25, 2022, the trial court issued a judgment granting defendants' motion for summary judgment and dismissing with prejudice Ms. Salzman's cause of action. The trial court reasoned that Ms. Salzman failed to present facts that tend to prove that a Matherne's Supermarket employee either created the hazardous condition or that the grocery store had actual or constructive knowledge of the condition.

Ms. Salzman files this timely appeal, seeking review of the trial court's April 25, 2022 judgment granting defendant's motion for summary judgment and dismissing her cause of action with prejudice.

### STANDARD OF REVIEW

Appellate courts review the granting or denying of a motion for summary judgment *de novo*, using the same criteria that governs the trial court's consideration of whether summary judgment is appropriate. *Richardson v. La.-1 Gaming*, 10-262 (La. App. 5 Cir. 12/14/10), 55 So.3d 893, 895.

"[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). Although the burden generally rests with the mover, if the mover will not bear the burden of proof at trial, the mover need only show there is an "absence of factual support for one or more elements essential to the adverse party's claim." La. C.C.P. art. 966(D)(1). The adverse party must then show there

is "factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

## *ISSUES PRESENTED ON APPEAL*

The seminal issue raised on appeal is whether a genuine issue of material fact exists as to whether Matherne's Supermarket created or had actual or constructive notice of the alleged hazardous condition that Ms. Salzman claims caused her injuries.

Ms. Salzman bases her claim upon the theory of recovery that the store "created" the hazardous condition causing her fall, by negligently addressing the frequent and repeated leaking of liquid meat byproduct throughout the store, of which the store had knowledge. Pursuant to La. R.S. 9:2800.6(B)(2), Ms. Salzman posits that because the store "created" the dangerous condition, she need not prove the store had actual or constructive knowledge of the specific puddle in which she slipped and fell. For purposes of defeating summary judgment, Ms. Salzman asserts that a material issue of fact exists as to whether the grocery store "created" the hazardous condition that caused her fall. As discussed in detail below, we agree. Furthermore, the facts of this case demonstrate that the answer to the principal question hinges in part on answering the subsidiary questions of what constitutes the creation of a hazardous condition and whether Matherne's Supermarket's alleged conduct suffices to show that it "created…the condition which caused the damage" under La. R.S. 9:2800.6(B)(2).

## *DISCUSSION*

In her petition, Ms. Salzman claims that she slipped and fell on a foreign substance found on the floor of Matherne's Supermarket and asserts that Matherne's Supermarket is liable for failing to properly maintain its premises. Her action against Defendants is governed by Louisiana's Merchant Liability Statute, La. R.S. 9:2800.6, which concerns negligence claims brought against merchants for accidents

caused by a condition existing on or in the merchant's premises. La. R.S. 9:2800.6 provides in pertinent part:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
> (2) The merchant either **created or had actual or constructive notice of the condition which caused the damage,** prior to the occurrence.
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

 (emphasis added).

A reading of subsection (B)(2) of the Merchant Liability Statute sets forth three potential theories of recovery: (1) the merchant created the condition that caused plaintiff's harm; (2) although it did not create the condition that caused the plaintiff's harm, the merchant had actual notice of the condition; or (3) although it did not create the condition that caused the plaintiff's harm, the merchant had constructive notice of the condition. *Davis v. Cheema*, 14-1316 (La. App. 4 Cir. 5/22/16), 171 So.3d 984, 989. Therefore, by the express language of the statute, if a claimant establishes that the merchant created the injury-causing condition, he need not prove the notice requirement. *Id.* at 993; *See also Savoie v. Sw. La. Hosp. Ass'n*, 03-982 (La. App. 3 Cir. 2/25/04), 866 So.2d 1078, 1081.

The general facts relating to Ms. Salzman's fall are not in dispute. The parties do not dispute that Ms. Salzman slipped and fell on pink puddles of "chicken juice" found on the floor of Matherne's Supermarket. The parties do not dispute that the

condition that caused Ms. Salzman to slip and fall was the leaking of liquid byproduct from the store's packaged meat products onto the store's floor. Ms. Salzman's claim relies on the first theory of recovery under La. R.S. 9:2800.6(B)(2). Therefore, Ms. Salzman need not prove the notice requirement, as her theory of recovery relies on finding Matherne's Supermarket created the condition. Consequently, the issue on summary judgment is whether the evidence is sufficient that a reasonable trier of fact could find that Matherne's Supermarket created the condition that caused Ms. Salzman's fall.

In support of summary judgment, Defendants argue that there is no evidence to establish who or what caused the liquid to be present on the floor, as well as a lack of evidence of how long the substance was on the floor before Ms. Salzman fell. Defendants also argue there is no evidence that a Matherne's Supermarket employee spilled or leaked poultry or meat juice in the aisle where Ms. Salzman fell. Therefore, Defendants claim that Ms. Salzman cannot meet her evidentiary burden of establishing that Matherne's Supermarket either created or had actual or constructive notice of the condition prior to her fall.[1]

Ms. Salzman argues, however, that a genuine issue of material fact remains as to whether Matherne's Supermarket created the condition which caused Ms. Salzman's injuries. Ms. Salzman contends that Matherne's Supermarket knew that leaking meat juice from its prepackaged and repackaged products created an unsafe condition for its customers. The store was also aware that its packaging methods caused meat juice to leak regularly onto the floors of its store. To address the unsafe condition, Matherne's Supermarket implemented some monitoring practices to address the condition. Yet, store employees testified that the leaking of meat juice onto the store's floor persisted on an almost daily basis. Ms. Salzman contends that

---

[1] Defendants contest only Ms. Salzman's ability to carry her burden under La. R.S. 9:2800.6(B)(2). Defendants raise no objections to Ms. Salzman's ability to carry her burden under subsections (B)(1) and (B)(3) of the statute.

the evidence shows the store was aware that its packaged meat products and repackaging methods created the hazardous condition. Further, the fact that meat juice continued to leak onto the floors of the grocery store, Ms. Salzman contends, is evidence that Matherne's was negligent and unsuccessful in adequately addressing and correcting a known unsafe condition. Ms. Salzman maintains that the failure to correct a known unsafe condition is sufficient to establish that Matherne's Supermarket created the injury-causing condition, as required by La. R.S. 9:2800.6(B)(2).

On *de novo* review, the question is whether Ms. Salzman has presented sufficient evidence to establish a genuine issue of material fact exists as to whether Matherne's Supermarket created the condition that caused Ms. Salzman's alleged injuries. More specifically, the issue before us is whether the grocery store's failure to correct a known problem with its packaged meat products and repackaging methods can qualify as "creation" of a hazardous condition under La. R.S. 9:2800.6(B)(2).

While four of the five Louisiana circuit courts of appeal and both the United States Fifth Circuit Court of Appeals and various Louisiana federal district courts, have been called upon, on summary judgment, to interpret the language of La. R.S. 9:2800.6(B)(2), and specifically the use of the term "created," this Court has not. The pivotal issue presented here—what constitutes creation of a hazardous condition—is a *res nova* issue for this Court.

Our review of the jurisprudence demonstrates that there is a split among the circuit courts of appeal regarding the proper interpretation of La. R.S. 9:2800.6(B)(2) and the use of the word "created." The First and Second Circuit courts of appeal, in *Ross v. Schwegmann Giant Super Markets, Inc.*, 98-1036 (La. App. 1 Cir. 5/14/99), 734 So.2d 910, 913, the case upon which Defendants rely, and most recently, in *Matlock v. Brookshire Grocery Co.*, 53,069 (La. App. 2 Cir.

11/20/19), 285 So.3d 76, have opined that where the hazard in question does not emerge through the direct action of the merchant's employees, the merchant did not "create" the condition within the context of La. R.S. 9:2800.6(B)(2). In both cases, the courts of appeal found there was no evidence to suggested that the store employees were "directly responsible" for the spill in those cases.

By contrast, the Fourth Circuit, in *Davis*, found that while the evidence was insufficient to establish an issue of fact as to constructive notice of the injury-causing condition, there was sufficient circumstantial evidence from which the trier of fact could reasonably infer that the merchant created the injury-causing condition. Moreover, the Third Circuit, in *Savoie*, determined that the plaintiffs were not required to prove actual or constructive notice of the alleged wax buildup, which allegedly caused the plaintiff to fall, where evidence that the hospital maintained its own floors and that the floors had a long-term buildup of wax tended to show the hospital created the unreasonably dangerous condition. *See also Gray v. Wal-mart La., L.L.C.*, 484 F. App'x 963, 966 (5th Cir. 2012) (finding the evidence insufficient to raise a fact issue as to whether the defendants created the hazardous condition where no evidence was presented to show employees were responsible for the hole in the roof or that the store was responsible for maintaining its own roof). The holdings in these cases demonstrates the varied interpretations of subsection (B)(2) of the Merchant Liability Statute.

Where the First and Second Circuit courts of appeal suggest that a merchant's creation of a hazardous condition is only satisfied through evidence that the merchant or its employees took some direct action, the Third Circuit interprets subsection (B)(2) more broadly to find that evidence that the merchant is responsible for maintenance of the thing that caused the plaintiff's injury is enough for a determination that the merchant created the hazardous condition.

In each of the cited cases, the appellate court's interpretation of "created," as

used in La. R.S. 9:2800.6(B)(2), is discussed in terms of the facts specific to the case before it. However, it is only in *Deshotel v. Wal-Mart La., L.L.C.*, 850 F.3d 742, 747-48 (5th Cir. 2017), a case from the United States Fifth Circuit Court of Appeals, that a court endeavored to unify the varied interpretations of subsection (B)(2). In *Deshotel*, the United States Fifth Circuit examined Louisiana's jurisprudence interpreting La. R.S. 9:2800.6(B)(2) to establish a definition for what constitutes the creation of a hazard by synthesizing the findings from *Ross* and its progeny.

In *Deshotel*, a customer slipped and fell on water from a leaking roof, which the customer alleged was negligently maintained. *Id.* at 744. The accident report indicated that the customer slipped on a clean floor, although there were small drops of water on it, and it indicated that the weather was rainy. Both parties agreed that the store had roof leaks, but they disagreed as to their scope and frequency. Wal-mart claimed that the extent of the leaks was confined to specific areas of the store and were attributed to the installation of new skylights. By contrast, the plaintiff alleged that the store was "plagued by a chronically leaky roof." *Id.* at 745. The store manager testified that at the time of the customer's fall, leaks were springing up regularly and that new leaks were a known issue for the store. He testified that not only were there leaks throughout the building, but also store employees knew to look for new leaks that had not been identified or marked whenever it would rain. The record also contained photographs that purported to show that on the day of the customer's accident, Wal-mart had placed buckets and caution signs in various parts of the store. Additionally, billing records showed the store paid for roof repairs near the date of plaintiff's fall and that the store paid for a full roof repair after plaintiff's fall.

On summary judgment, the court was presented with two questions: first, whether the evidence was sufficient that a jury could find that the water the customer slipped on came from water that leaked from the roof; and second, whether Wal-

mart's alleged negligent maintenance of the roof created the condition that caused the customer's injuries. *Id.* at 745. Relevant to our discussion is the court's consideration of the latter question.

Synthesizing Louisiana's jurisprudence as to what constitutes the creation of a hazardous condition under La. R.S. 9:2800.6(B)(2), the court stated:

> It is evident that for the defendant to have "created" the hazardous condition, it must be "directly responsible" for the plaintiff's injuries. *Ross*, 734 So.2d at 913. That **direct responsibility can be shown in one of two ways**—either via evidence that the defendant's employees actually created the hazard (by, for example, spilling crab salad on the floor, as was alleged in *Ross*) **or evidence that the defendant was responsible for maintaining the area where the hazardous condition was manifest**, as in *Savoie* and *Gray*.

*Id.* at 747-48 (emphasis added).

The *Deshotel* court rejected Wal-mart's argument that the customer could not satisfy La. R.S. 9:2800.6(B)(2) because "the law requires that it must have had notice of the condition no matter what." *Id.* at 748. The court explained that the plain language of La. R.S. 9:2800.6(B)(2) makes clear that the plaintiff must demonstrate "**either** creation of the hazard or actual or constructive notice thereof." *Id.* at 748 (emphasis in original); *See also Davis*, 171 So.3d at 989. There is no requirement that the plaintiff prove that the defendant had notice of the hazard if the defendant created it. *Savoie*, 866 So.2d at 1081.

Wal-mart also alleged that because the specific hazard that caused the customer's injury "emerged not through direct action by its employees but rather through a failure to remedy a dangerous condition," it was not "directly responsible" as contemplated in *Ross*. *Deshotel*, 850 F.3d at 748. The U.S. Fifth Circuit rejected this argument, explaining:

> Wal-Mart seems to think that so long as its employees did not personally create the leaks—by, say, making holes in the roof to affix some object—Wal-Mart escapes liability under the statute. To hold otherwise, it urges, would be to convert the statute into "strict liability."
> We do not read the statute so harshly. **The ordinary meaning of "creation" admits of creation both through direct action—**

pounding holes into the roof with hammers—**and failure to act**—e.g., a failure to fix a known leaky roof, leading to the creation of hazardous puddles on the floor. And the claim that we would be reading strict liability into the statute significantly overstates the hardship to Wal-Mart, for several reasons.

First, of course, there is the procedural posture of this case, which Wal-Mart avoids. By reversing the summary judgment, we only permit a jury to find that Wal-Mart created the hazard; we make no such finding ourselves. Second, there are other provisions in the statute, which are not at issue on this appeal, that a plaintiff must satisfy before a defendant can be held liable—namely, that the condition created an unreasonable risk of harm and that the defendant failed to exercise reasonable care. *See* LA. REV. STAT. ANN. § 9:2800.6(B).

Finally, Louisiana precedent is explicit that Wal-Mart's notion is incorrect. *See Savoie*, 866 So.2d at 1081 (holding that because the defendant maintained the floors on which the hazard occurred, it created the hazard). **Maintenance, under Louisiana courts' interpretation of Louisiana law, is enough for creation**. And Wal-Mart has not provided reasons for us to disregard that legal reality.

*Id.* (emphasis added).

The *Deshotel* court recognized that even if the defendant is responsible for maintaining its own floors, the plaintiff must still point to evidence, absent of speculation, which suggests that the defendant created the hazardous condition. *Id.* (citing *Gray*, 484 F. App'x at 966); *See also Harris v. Dollar Tree Stores, Inc.*, 2020 WL 6868848 (finding summary judgment appropriate where plaintiff's only evidence was defendant's interrogatories that it was responsible for maintaining its floors). The court in *Deshotel* ultimately concluded that summary judgment was inappropriate because evidence was presented that Wal-mart was responsible for its own roof. Billing records showed the store paid for roof repairs near the date of plaintiff's fall and that the store paid for a full roof repair after plaintiff's fall. Therefore, the court concluded that Wal-mart's maintenance of its own roof was evidence sufficient to show a genuine issue of material fact existed as to whether "Wal-mart created the hazardous condition through its failure of maintenance." *Id.*

Additionally, in *Jackson v. Family Dollar Stores of La.*, *unpub.*, 2020 WL 3066629 (W.D. La. 6/9/20), the plaintiff slipped and fell in a puddle of liquid that leaked from an air conditioning vent in the ceiling of the defendant's store. Evidence

showed that the store was aware that the ceiling leaked prior to the plaintiff's accident; that the air conditioner caused a leak from the ceiling on and off for about three weeks prior to the accident; that the store had repairs made approximately three times before the accident; that the leak was "regular, but it was inconsistent;" and that when the store was aware that the ceiling was leaking, its employees would place cones and a water receptacle in the area. *Id.* at \*1. The court determined that, like the defendant in *Deshotel*, the store was aware of and had undertaken steps to repair the hazardous condition, but failed to successfully make the repair. *Id.* Based on the evidence presented, the court found the evidence sufficient to raise an issue of fact as to whether the store created the condition that caused the plaintiff's fall.

By contrast, Defendants in this case rely on *Ross* to argue that there is no evidence that Matherne's Supermarket created the complained-of condition. In *Ross*, the plaintiff sought damages against the supermarket after she slipped and fell on crab salad from a self-service station. Like Ms. Salzman, the plaintiff could not say how the crab salad came to be on the floor or for how long it was on the floor before she fell. Both the store's supervisor and loss prevention officer gave no indication as to how the crab salad arrived on the floor or for how long. The supermarket moved for summary judgment on grounds that the plaintiff lacked proof to demonstrate that it either created or had actual or constructive notice of the crab salad on the floor. The First Circuit determined "that the wording of [La.] R.S. 9:2800.6 B(2) which requires plaintiff prove that 'the merchant ... created ... the condition which caused the damage' means there must be proof that the merchant is **directly responsible** for the spill or other hazardous condition." *Id.* at 913 (emphasis added). Considering the self-service nature of the sample station, the court determined that it was likely the spill was the result of a customer dropping the crab salad on the floor, and therefore, in the absence of evidence to suggest otherwise, the evidence failed to show that the defendant merchant created the

hazardous condition. Since *Ross,* some courts have interpreted "directly responsible" to refer only to the direct actions of the merchant or its employees. *See e.g., Matlock*, *supra*.

Still, as the United States Fifth Circuit explained in *Deshotel*, "[t]he ordinary meaning of 'creation' admits of creation both through direct action—pounding holes into the roof with hammers—and failure to act—e.g., a failure to fix a known leaky roof, leading to the creation of hazardous puddles on the floor." *Deshotel*, 850 F.3d at 748. Additionally, when a merchant "maintains its own floors, the [plaintiff is] not required to prove that it had notice or constructive notice of the possible [hazard]. If there [is] a [hazard], [defendant] created it, thus, the notice requirement of La. R.S. 9:2800.6 does not apply...." *Savoie v. Sw. La. Hosp. Ass'n*, 03-982 (La. App. 3 Cir. 2/25/04), 866 So.2d 1078, 1081 (finding merchant "created" hazard where plaintiff slipped on wax-like substance on floor, and merchant was responsible for cleaning floor); *See also Gray*, 484 F. App'x at 966 (finding no issue of material fact as to whether Wal-mart created the roof leak because there was no evidence showing that Wal-Mart's employees were responsible for the holes in the roof, nor any evidence showing that Wal-Mart was responsible for maintaining its own roof).

In the instant case, Defendants urge that, like *Ross*, there is no evidence that Matherne's Supermarket employees took any direct action that resulted in the specific instance of leaking of meat juice on the grocery store floor that caused Ms. Salzman's accident. Defendants point to Ms. Salzman's testimony that she did not see any employee walking ahead of her prior to her fall or witness an employee spill anything on the floor; the store managers were not aware that there was any liquid substance on the floor; and no one had informed the store of the substance's presence on the floor prior to Ms. Salzman's accident. Therefore, Defendants claim that Ms. Salzman is unable to prove that Matherne's Supermarket either created or had actual or constructive notice of the specific instance of leaking meat juice that caused Ms.

Salzman to slip and fall. We find Defendants' argument in support of its contention is flawed.

First, Ms. Salzman's claim that Matherne's Supermarket created the hazardous condition is based on a failure to act, not a direct action. Defendants focus on the spill itself that caused Ms. Salzman's fall to argue that there is no evidence to show Matherne's Supermarket or its employees were directly responsible for the puddles of meat juice on the floor in this case. Defendants maintain it is plausible that the meat juice Ms. Salzman slipped on was the result of the direct actions of a customer versus a store employee. Without evidence of how the meat juice ended up on the floor, they claim Ms. Salzman cannot prove it is "directly responsible," as contemplated in *Ross*, and, therefore, created the puddles that caused Ms. Salzman's fall. However, this argument incorrectly assumes that Ms. Salzman's theory of recovery is based on an affirmative act of Matherne's Supermarket or one of its employees.

Review of the pleadings and Ms. Salzman's opposition demonstrates that her theory of recovery pursuant to La. R.S. 9:2800.6(B)(2) is based not on some direct action of Matherne's Supermarket, but rather on its failure to act. Ms. Salzman claims that it is the act of omission, specifically the failure to fix a known leaking issue with its prepackaged and repackaged products that led to the creation of hazardous puddles on the floor, which created the injury-causing condition in this case.

In support of her assertion that Matherne's Supermarket created the hazardous condition, Ms. Salzman points to evidence that the store was aware that its packaged meat products and repackaging methods regularly resulted in liquid byproduct leaking onto the store's floor. The store's knowledge that leaking from its prepackaged and repackaged meat products routinely resulted in puddles on the floor, which posed a slipping hazard, required Matherne's Supermarket to remedy

the ongoing and unsafe condition. Ms. Salzman claims the fact that the store took measures to address the issue demonstrates the store's concern regarding the unsafe condition its leaking packages posed and as such, its notice of the condition.

In response, Defendants claim the aforementioned evidence goes to establish constructive notice—the third theory of recovery recognized under subsection (B)(2). Because constructive notice requires proof that the puddles of meat juice Ms. Salzman slipped and fell on were present for some period of time before she fell such that the store should have known about it, Defendants argue that the store's notice that its prepackaged and repackaged products often leaked is insufficient to establish the store had constructive notice of the particular spill that caused Ms. Salzman's fall. In that neither Ms. Salzman nor the manager and assistant manager could testify as to how, when, or by whom the puddles of meat juice came to be on the store floor, Defendants argue, Ms. Salzman cannot demonstrate that the store had constructive notice of the hazardous condition.

Defendants' argument in this regard is also flawed, not for their interpretation of the law on constructive notice, but rather because Defendants conflate Ms. Salzman's basis for recovery with what Defendants believe the evidence presented on summary judgment stands to prove. Ms. Salzman has elected to pursue a theory of recovery based on Matherne's Supermarket having created a hazardous condition. She has not asserted a claim based in, nor does the evidence she relies on go to establish, a theory of recovery rooted in constructive notice as contemplated under La. R.S. 9:2800.6(B)(2). The evidence relating to what notice Matherne's Supermarket had in this case refers to the store's general knowledge that its packaged meat products leaked almost daily, resulting in a slipping hazard and, in particular, that its repackaging methods were faulty. In other words, the evidence of knowledge in this instance goes to notice of a known unsafe condition. This evidence goes to establishing that the merchant created the hazardous puddles on the floor through a

failure to act. *See Deshotel*, 850 F.3d at 748 (finding a failure to fix a known leaky roof, leading to the creation of hazardous puddles on the floor was sufficient evidence to create a genuine issue of fact as to whether the merchant defendant created the injury-causing condition). This evidence is separate and distinct from knowledge, actual or constructive, of the specific instance of liquid meat juice that caused Ms. Salzman to slip and fall.[2]

According to Ms. Salzman, evidence that the store was aware of its faulty packaging and negligent repackaging methods coupled with evidence that the leaking was chronic and continued on an almost daily basis, despite the store's preventative implementations, is evidence that Matherne's Supermarket failed to correct a known unsafe condition. This failure to act, she contends, constitutes creation of a dangerous condition—hazardous puddles on the floor. Therefore, Ms. Salzman's theory of recovery, which she submits the evidence shows, is not that Matherne's Supermarket had constructive notice of this particular instance of leaking meat juice that occurred in September 2018, but rather, that the failure to successfully correct a known unsafe condition created the injury-causing condition in this case.

Unlike *Deshotel*, there is no dispute as to what caused Ms. Salzman's fall. The parties agree, at least for purposes of summary judgment, that leaking from the store's packaged meat products caused the puddles on the floor of the store.

Ms. Salzman testified that she did not see the poultry juice before she fell. She did not know how the liquid came to be on the floor, who put it there, or how long the liquid was on the floor. Ms. Salzman testified that she did not see any employees or customers walking ahead of her in the aisle. Like Ms. Salzman, the

---

[2] In *Davis*, the court drew a similar distinction in finding that the plaintiff in that case, while she could not establish that the gas station had constructive notice of the kitty litter the plaintiff slipped and fell on, produced sufficient evidence from which to infer that the gas station created the injury-causing condition. Further, the evidence that tended to prove that the gas station created the condition was circumstantial in nature and in that way the inference that can be drawn—that the grocery store created the injury-causing condition, is similar to this case.

manager and assistant manager of Matherne's Supermarket testified that they did not know how the particular liquid arrived on the floor, who put it there, or how long it had been on the floor before Ms. Salzman fell.

Still, it is undisputed that the store experienced chronic and habitual leaks from its prepackaged and repackaged meat products prior to Ms. Salzman's fall. The manager and assistant manager testified that leaking of meat juice, particularly from the store's repackaged products, was an ongoing issue. Ms. Wells, the on duty assistant manager, observed the liquid on the floor after Ms. Salzman fell. She testified that she recognized the liquid on the floor as "chicken juice." Ms. Wells acknowledged that she had previously seen "chicken juice drippings" on the floor of the store. She also agreed that it was not unusual to see "juice drippings" on the floor of the grocery store.

Mr. Schwaibold, the store manager, was not present the day Ms. Salzman slipped and fell; however, he similarly testified that leaking of meat juice from the store's prepackaged and repackaged meat products was not a rare occurrence. In fact, he testified that it "happens a lot. You see it every day, every other day, every couple of days. It happens more than you would think it does." He testified that there was "always a lot of chicken juice." Mr. Schwaibold acknowledged that leaking packages was a regular issue that the store tried to address. Apparently, the leaking was consistent enough that, according to Mr. Schwaibold, the store implemented procedures to specifically address the issue, including training store employees to walk the display case to check for leaking packages, as well as the aisles to look on the floor for puddles from leaking packages. When employees found a leaking package, it would be sent back for repackaging, and when employees observed puddles on the floor of the store, they were to use the rag they carried with them to wipe up any spills. Mr. Schwaibold stated that the store also offered plastic bags for customers to use, at the customer's discretion, to prevent leaking. Even so,

the leaking of meat juice from the store's prepackaged and repackaged meat products continued to be an issue. The leaking occurred consistently enough that Mr. Schwaibold testified that store employees saw it "every day, every other day, every couple of days." Despite the store's knowledge that its packaged meat products and repackaging methods led to hazardous puddles of meat juice on the floor, Matherne's Supermarket was apparently unsuccessful in remedying the condition.

Creation of a hazardous condition includes both direct action and the failure to act. *Deshotel*, 850 F.3d at 748. In this case, there is direct testimony that there apparently had been uncorrected, continuous and recurrent leaking for some time before Ms. Salzman's fall. The evidence reveals that Matherne's Supermarket knew of the risk of leaking and failed to prevent it. Whether a failure to fix the leaking of meat packaged products created the injury-causing condition is a question for the fact-finder to decide. Therefore, based on the circumstances in this case, we find the evidence is sufficient to establish a genuine issue of material fact exists for trial as to whether Matherne's Supermarket created the condition that caused Ms. Salzman's fall. Here, as in *Deshotel*, Matherne's Supermarket was aware of and had undertaken steps to address the condition—in this case an issue with the packaging of its meat products, and particularly its repackaged products, that resulted in the leaking of meat juice on the floor—but apparently was unsuccessful, failing to remedy the issue. As the court in *Deshotel* stated, our holding "only permit[s] a jury to find [Matherne's Supermarket] created the hazard; we make no such finding ourselves." *Id.* Likewise, Ms. Salzman must satisfy the other provisions of La. R.S. 9:2800.6(B), which are not before us on appeal, before Matherne's Supermarket can be held liable. Nevertheless, we find that Ms. Salzman has presented sufficient evidence to show a genuine issue of material fact exists for trial and the jury's determination.

### *DECREE*

Considering there is evidence sufficient to establish a genuine issue of

material fact exists relating to whether Matherne's Supermarket created the injury-causing condition in this case, we find summary judgment at this stage of the proceedings is inappropriate.  Accordingly, we reverse the trial court's judgment granting summary judgment in favor of Defendants and remand the matter for further proceedings in line with this opinion.

**REVERSED AND REMANDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
CORNELIUS E. REGAN, PRO TEM

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**JUNE 22, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT
REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-CA-404

### E-NOTIFIED
40TH DISTRICT COURT (CLERK)
HONORABLE J. STERLING SNOWDY (DISTRICT JUDGE)
DELANEY P. SHEA (APPELLANT)          WILLIAM E. MURA, JR. (APPELLANT)          LEONARD M. D'ANGELO (APPELLEE)

### MAILED
WARREN A. FORSTALL, JR. (APPELLANT)          TROY G. BROUSSARD (APPELLANT)
ATTORNEY AT LAW                              ATTORNEY AT LAW
320 NORTH CARROLLTON AVENUE                  701 PAPWORTH AVENUE
SUITE 200                                    SUITE 210
NEW ORLEANS, LA 70119                        METAIRIE, LA 70005